[Civ. No. 255. Fourth Appellate District.—July 30, 1930.]

JESSE NEWTON et al., Appellants, v. H. D. BRODIE et al., Respondents.

F. L. Richardson for Appellants.

J. C. Hizar for Respondents.

AMES, J., *pro tem.*—Defendant City of Oceanside is a municipal corporation organized under the general Municipal Corporation Act of the state of California (Deering's Gen. Laws 1923, Act 5233, sec. 850), as a city of the sixth class, while the other defendants, at the time of the institution of this action were members of and constituted its board of trustees. The plaintiffs are citizen residents and taxpayers of said city and brought this action for its benefit.

On the twenty-second day of September, 1926, one B. C. Beers presented to the board of trustees of said city his duly verified claim in the sum of $129.09 for freight, incurred for the transportation of certain water-pipe sold and delivered to the City of Oceanside in the year 1924. This claim was allowed and ordered paid by the board of trustees, and on the twenty-third day of September, 1926, the city clerk issued a warrant drawn upon the treasurer of the City of Oceanside in the amount of Beers' claim. On the eleventh day of December, 1926, a certain judgment was rendered against the City of Oceanside in the sum of $2,124.10 in favor of the N. O. Nelson Manufacturing Company, a corporation, which judgment was based on a claim for water-pipe sold and delivered to defendant municipality on or about the thirty-first day of March, 1924. On the twenty-sixth day of January, 1927, a compromise agreement was entered into between the parties litigant to said action whereby the plaintiff, said N. O. Nelson Manufacturing Company, a corporation, agreed to discount said judgment ten per cent of the amount thereof, thereby reducing the claim of said judgment creditor to the sum of $1911.69, and on the twenty-sixth day of January, 1927, the city clerk was directed to draw his warrant upon the treasurer of said city in said amount, which warrant was drawn and signed by the president of the board of trustees in the amount agreed upon. Both of said warrants directed the payment of the respective sums therein named and directed that the treasurer charge the same to the "Water Fund" of said city. The city treasurer testified that the warrant in favor of Beers was "paid by him out of the money and funds in his possession belonging to the City of Oceanside on or about the 23d day of September, 1926, and debited the same to the 'Water Fund.'" He further testified that on or about the twenty-seventh day of January, 1927, the warrant drawn in favor of the N. O. Nelson Manufacturing Company was presented to him and that he did "on said date pay to said payee named therein said sum out of the funds and moneys in his hands belonging to the City of Oceanside."

The plaintiffs contend that the indebtedness represented by the two warrants, having been incurred in 1924, and having been paid in 1926 and 1927, respectively, out of funds

other than the income and revenue provided for the year in which the liability was incurred, was a violation of section 18 of article XI of the Constitution of the state of California, and of section 865 of the general Municipal Corporation Act, and that said payments were unauthorized and void, and seek by this action to compel the defendants to reimburse the city for such alleged unlawful disbursements of its funds.

The trial court found that the claim of B. C. Beers and that of the N. O. Nelson Manufacturing Company were paid out of the funds provided for the payment of obligations for the year 1924, the year in which the same had accrued, and that they were not paid out of the funds of any other year than that in which the obligations were incurred. And that is the controlling question to be determined here. From the judgment favorable to defendants, plaintiffs appealed on a bill of exceptions.

It appears from the testimony of the city clerk that the moneys in the city treasury were allotted to separate "Funds," among which were the "Library Fund," "Street Improvement Fund," "Park and Boulevard Fund" and funds of special street assessment districts, in which funds were kept moneys derived from taxes and assessments levied and collected for specific purposes only, and which could not be used for paying the general running expenses of said city; that other funds were maintained, the use of which was not so limited, including the "General Fund," the "Redemption Fund" and the "Water Fund." In the general fund were kept all of the revenues of the city which were collected "for the purpose of paying the general expenses of running and operating said city." Moneys collected for the redemption of property sold for delinquent taxes were kept in the redemption fund, and moneys collected for the sale of water produced and distributed by said city in the operation of its water plant and distribution system, were kept in the water fund. It does not appear that any restriction was placed upon objects and purposes for which these funds could be used, other than such restrictions as are placed by law upon the use of municipal funds, generally. Periodical reports of the city clerk showing the balance credited to said respective funds were introduced at

the trial, and these reports, supplemented by oral evidence, disclosed the balances credited to said respective funds at various times from and including the first day of January, 1924, the year during which said indebtedness accrued, up to and including December 31, 1926.

It appears from this evidence that during said period the amounts credited to said several funds fluctuated. On January 1, 1924, there was a deficit of $13.85 in the water fund, but on January 1, 1925, that fund was credited with a balance of $2,025.26, which was obviously acquired during the year 1924, but the months during which such balance was so enhanced, nor the specific sources from which it was derived, does not appear from the record. Subsequent to January 1, 1925, and prior to the payment of Beers' warrant, the minimum balance in the water fund was $1376.49. In other words, that sum was, in so far as disclosed by the record, carried over from 1924, and it was upon this fund that the warrant of Beers was drawn. It was money "provided for said year," viz., 1924, and was actually in the treasury during such year and remained there at all times until the claim was paid and no liability accrued against the defendants by reason of such payment.

But we are confronted by a different question in considering the payment of the claim of the N. O. Nelson Manufacturing Company. We will later discuss the question of the availability of money in the several funds in the city treasury out of which this claim could have been satisfied and will now assume that all moneys carried over from 1924, other than moneys credited to special funds and dedicated to specific purposes, would have been available.

It appears from the report of the city clerk that on January 1, 1924, the balance in the general fund was $6,946.35, and that on January 1, 1925, there was a balance credited to that fund in the sum of $15,619.17, although the clerk testified that, on that date, there was a deficit of $13.85 in the general fund.

There is no evidence in the record to explain this conflict, and we will assume, for the purpose of upholding the findings of the trial court, that the written report of the clerk was accepted by it as correct.

But between the time that the indebtedness to the Nelson Company was incurred in 1924, and the time of its payment in 1927, the moneys in the three available funds which had been carried over from 1924 had been depleted to such an extent that they were insufficient to pay this claim. And on the thirty-first day of December, 1926, the amount of money so brought forward amounted to the sum of $1776.94, after having deducted therefrom the sum of $129.09, the amount of Beers' claim which was properly paid. This, it will be observed, was $134.75 less than the amount of the Nelson Company's claim. But it further appears that there was collected and paid into the redemption fund, in the year 1925, the sum of $514.29, and in the year 1926, the sum of $1754.98 as delinquent taxes levied in 1924 and which became delinquent during that year. It therefore appears that on the thirty-first day of December, 1926, the moneys in the general fund of said city, which had been carried over from 1924, when augmented by money received from the redemption of property on which the taxes had become delinquent in 1924, was sufficient with which to pay the demand of the Nelson Company, and no diminution of that fund having been disclosed by the record, we must assume that a sufficient balance was on hand with which to pay the claim of the Nelson Company at the time that its warrant was presented and paid.

If the two warrants were unlawfully authorized and allowed, it is conceded by the respondents that this action would lie by the plaintiffs to recover the amount thereof on behalf of the municipality. (*Osburn* v. *Stone,* 170 Cal. 480 [150 Pac. 367].)

Section 18 of article XI of the Constitution of this state, in so far as the same is applicable to the case at bar, is as follows:

"No county, city, town, township, board of education, or school district, shall incur any indebtedness or liability in any manner or for any purpose exceeding in any year the income and revenue provided for such year, without the assent of two-thirds of the qualified electors thereof, voting at an election to be held for that purpose. . . . Any indebtedness or liability incurred contrary to this provision, with the exceptions hereinbefore recited, shall be void."

Pursuant to the constitutional provision, the legislature incorporated in the Municipal Corporation Act, under which the City of Oceanside existed, the following provision:

"The Board of Trustees shall not create, audit, allow or permit to accrue any debt or liability in excess of the available money in the treasury that may be legally apportioned or appropriated for such purpose."

█ Were moneys collected in 1925 and 1926 from the redemption of property, on which the payment of taxes for 1924 had become delinquent, available for the payment of the claim of the Nelson Company? We think they were. No authorities have been cited, and none have been found by us, dealing with this identical question. But it is obvious from the evidence above referred to that at the time that the indebtedness was permitted to accrue, the same was not in excess of the available money in the treasury that might have been legally apportioned and appropriated for that purpose. Had the creditor presented its claim, and had it been allowed during the fiscal year 1924, the contention that section 865 of the Municipal Corporation Act had been violated could not have been successfully maintained. Therefore, the claim of the Nelson Company at the time of its incipiency did not violate section 865 of the Municipal Corporation Act and was a valid claim. In construing the above provisions of the Constitution and the Municipal Corporation Act, it has been held that each year's income and revenue must pay each year's indebtedness and liabilities, and that no indebtedness or liability incurred in one year shall be paid out of the income and revenue of any future year, and any indebtedness incurred contrary to the inhibition of the Constitution and the statutes is absolutely void. (18 Cal. Jur. 880, and numerous cases there cited.)

In *Doland* v. *Clark*, 143 Cal. 176 [76 Pac. 958, 960], in construing the constitutional provision above quoted, the court said:

"It was evidently the intention of the framers of the Constitution to make the income and revenue of each year pay the indebtedness and liabilities incurred during such year, and that the revenues and income of a subsequent

year should not be applied to pay liabilities of a past fiscal year.''

The money received from the collection of taxes levied in 1924 would have been available for the payment of its current indebtedness during that year. Why should not the same money, which was provided to meet the current expenses of the same year, still be available for that purpose? The object for which the tax was levied and collected was the same in 1927 as it was in 1924 and we do not believe that the deferred collection of the same would destroy its use for the purpose for which it was originally designed.

In commenting on section 18 of article XI of the Constitution the appellate court in the case of *Wyckoff* v. *Force,* 61 Cal. App. 246 [214 Pac. 489, 490], said:

''It does not require that the money be on hand at the time the indebtedness is incurred or, in fact, that the income should have been provided at that time. It is sufficient if the indebtedness is within the income which has been provided or which will, in the ordinary course, be provided within the year.''

We think that the moneys in the redemption fund were moneys which could be well defined as ''the income and revenue provided for such year,'' viz., the year 1924, within the purview of the constitutional provision. The moneys which were collected and credited to the redemption fund during the years 1925 and 1926 as delinquent taxes levied during the fiscal year 1924, were income and revenue provided for such year. As to the manner in which the municipal taxes in the City of Oceanside are levied and collected, or when they are payable, or the time at which they become delinquent, we are not advised. Section 871 of the general Municipal Corporation Act of the state of California vests in the board of trustees the power and duty to provide by ordinance a system for the assessment, levy and collection of municipal taxes not inconsistent with the provisions of said act. But there has not been incorporated in the record in this case, a copy of any such ordinance or any evidence of its provisions. Assuming that such ordinance exists, we will therefore presume for the purpose of affirming the judgment in this case, that the taxes assessed and levied during that year, and which were subsequently col-

lected and deposited in the municipal treasury, were funds available with which to pay any indebtedness incurred during that year. ██ Nor do we think that the fact that this money remained in the redemption fund, and was not transferred to the general fund, placed it beyond the reach of the Board of Trustees for the purpose for which it was used. Our attention has not been called to any provision of the Constitution or statutes of this state which would prohibit the use of moneys received for delinquent taxes which were levied for the purpose of paying the ordinary and usual expenses in carrying on the operations of the municipality in a year subsequent to that during which they were levied.

██ The development and distribution of water for the use of a municipality and its inhabitants is among the general powers granted to the city by the act under which it was created and to which it owes its existence (subd. 3, sec. 862, Municipal Corporation Act) and clearly the construction and maintenance of a system of pipes and conduits for the purpose of carrying this power into execution, would be an expense chargeable against the general income and revenues of such city. ██ A division of the moneys belonging to the municipality into separate funds for administrative purposes is within the discretion of the legislative body of the city. No statute expressly authorizes the division of moneys of the city into such funds other than the funds required by law to be kept inviolate, and it may be conceded that the legislative power may segregate and divide its moneys into whatever separate funds its convenience or caprice may dictate. But in the exercise of this power a municipality is not permitted to arbitrarily create and maintain funds in its treasury, thereby making unavailable moneys which would otherwise be available for the payments due to its general creditors.

██ A claimant cannot be deprived of his right to a surplus in the treasury of a municipality simply because the particular fund against which his warrant is drawn, or said to be drawn, has become exhausted. (*Stevens* v. *Truman,* 127 Cal. 155 [59 Pac. 397].) In that case the payment of compensation to a court reporter had been refused because there was not sufficient money in a fund provided for the purpose of paying court reporters, while

there was a large surplus in the general fund which was available, and the Supreme Court said:

"The Board of Supervisors could not defeat the law by creating a special fund which might be inadequate to meet the payment of such claims as this, or, indeed, might be so limited as to seriously affect the administration of justice by the courts."

The case of *Higgins* v. *City of San Diego*, 131 Cal. 294 [63 Pac. 470, 474], involved a construction of the charter of the city of San Diego which designated certain funds and required the revenues raised by taxation and other sources, such as licenses and fines, to be apportioned to these various funds. In that case the defendant municipality sought to evade the payment of the claim of a creditor, but the Supreme Court said:

"If at the close of the fiscal year there is a surplus in any fund, not expressly reserved by some law for the payment of claims upon that particular fund, and there are no claims existing against that fund created during the year, such surplus, and any other surplus remaining in any other such fund, should be and is available to discharge the unpaid legitimate indebtedness of that fiscal year; and we find nothing in the law to forbid this just and proper course to be taken."

If a municipality is not restricted in the payment of claims out of funds created by its charter *a fortiori*, a city would not be limited to the payment of claims out of funds arbitrarily created by ordinance or resolution of its governing body unless otherwise restricted by law, and no such restriction exists.

The judgment is affirmed.

Cary, P. J., and Marks, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on August 20, 1930.