[Civ. No. 10115. First Appellate District, Division Two.—December 2, 1936.]

HENRY R. HUNTSMAN, Respondent, v. BOARD OF STATE HARBOR COMMISSIONERS et al., Appellants.

J. H. LA FORCE, Respondent, v. BOARD OF STATE HARBOR COMMISSIONERS et al., Appellants.

U. S. Webb, Attorney-General, and Lucas E. Kilkenny, Deputy Attorney-General, for Appellants.

Ingemar E. Hoberg and Carey Van Fleet for Respondents.

STURTEVANT, J.—The respondents in the trial court, hereinafter called the defendants, have appealed from a judgment directing that a writ of *mandamus* issue commanding them, in effect, to pay to the petitioners in the trial court, hereinafter called the plaintiffs, certain sums in salary alleged to have been unlawfully withheld and not paid. One action, as to certain claimants, was commenced by Huntsman. Another was commenced by La Force in behalf of himself and his assignors. Both actions involve the same principles of law and differ only as to the persons interested, the amount involved, the particular position held by each. Before the trial both actions were consolidated, tried together, and appealed on one and the same record. No question of fact is involved but many questions of law are presented. The defendants attack many findings made by the trial court and claim such findings are not supported by the evidence.

Heretofore the plaintiffs and their assignors were employees of the Board of State Harbor Commissioners which will hereinafter be referred to as the board. Each of said employees had acquired a complete civil service status and was employed on a fixed monthly compensation and, ordi-

narily, was engaged in the performance of his labor six days a week. They were all so engaged in operating, and it took all of them to operate, two dredges which the defendant board was operating at the port of San Francisco.

The several amounts claimed to be due to said employees they alleged accrued between July 1, 1932, and September 1, 1934, both dates inclusive. The defendants admit said sums were not paid, but they assert they were never earned because of the following facts: The funds of the board for conducting its operations at the port of San Francisco are largely obtained from tolls on the shipping in and out of said port. During the recent world-wide depression the shipping at said port became greatly reduced and the receipts in tolls were so decreased that for the fiscal year ending June 30, 1932, the board was confronted with a large deficit. With that fact before it the board was bound to retrench. It could have legally laid off all the employees on said dredges or a part of them. (Sec. 14a, State Civil Service Act.) However, looking at the interests of all of said employees it decided on a modified plan which was, after obtaining the consent of the employees, to reduce the number of working days per week. Therefore, it prepared and presented to the said employees a written contract and asked that it be executed by each of them. Later it was signed by every one of them. Omitting the signatures of the parties, said instrument was as follows:

"San Francisco, Calif.,
July 1, 1932.

"Because of existing business conditions which have caused a substantial decrease in the revenues of the port of San Francisco, and made necessary a reduction in expenditures, including payrolls, and in order that employment may be spread as widely as possible among those at present employed by the port, rather than cause the laying off of many, we, the undersigned employees of the Board of State Harbor Commissioners, employed on a monthly basis, hereby agree to accept less than a full month, or full time employment, such time to be determined by the Board of State Harbor Commissioners, and we further agree to accept in full payment for services for the whole month, an amount to be arrived at by deducting from the full time

monthly rate of pay an amount equal to one-twenty-eighth. or one-thirtieth, or one-thirty-first of the monthly salary of each employee, in accordance with the number of days in the month, for each working day upon which no service is required to be performed.'' On its face it purports to be a complete modification of the contract of hiring. But the plaintiffs contend it is invalid for two reasons.

In the first place they contend said contract was not supported by any consideration and that the trial court so found. The defendant board replies that said finding was not supported by any evidence. It asserts that over its objection and exception some of the plaintiffs were asked if they received any consideration. To that question they replied they had not. The defendant contends such answers were legal conclusions. The contention is well founded. The mode of laying off employees was, at first, prescribed by rule XVI enacted by the civil service commission, hereinafter called the commission. That rule was in force during a part of the period involved in this action. Later section 14a of State Civil Service Act (Stats. 1933, chap. 214) was adopted. Said statute is, for all the purposes of this case, a statutory enactment of rule XVI. The procedure prescribed by said rules of law provided a method which would result in laying off of all, or parts of crews in such manner and order as would protect each employee in his rights of seniority and efficiency. According to the amount of funds available to the board for employing the plaintiffs or any of them, the financial interest of each individual depended on the facts (1) available funds, (2) seniority of the employee, and (3) efficiency of such employee. As to no single employee were these probative facts shown. The burden was on the plaintiffs. The contract being in writing a consideration is presumed. (Civ. Code, sec. 1614.)

It is next claimed that the board should have followed the statute and should not have attempted to be and act in a manner altruistic; and that under the facts it did not follow the law. Perhaps not. But it asserts it obtained a valid contract by which it was entitled to do what it did. To that assertion the plaintiffs reply that the contract was not a waiver by the plaintiffs of their rights. (Civ. Code, sec. 3513; *Lukens* v. *Nye,* 156 Cal. 498 [105

Pac. 593, 20 Ann. Cas. 158, 36 L. R. A. (N. S.) 244].)
Conceding, without deciding the point, it must be remembered that the defendants pleaded an estoppel of the plaintiffs to assert that there was no waiver. The plaintiffs make no reply. We think the case clearly called for one. When the contract was being executed everyone interested knew all of the facts. One who ran could read. The defendant board was commanded to function. It was prohibited from running into debt. The plaintiffs saw before them a situation in which some, if not all, might be laid off. No one stopped to inquire or ascertain which ones. The board has now been placed in a position from which it may not retire nor go ahead—except to violate the official oath of every member thereof. But, whatever may be the rights and wrongs under this point involving the validity of the express contract of the parties, it is clear that the subject of the controversy is and was the legality of the lay-off of the employees and their right to question it at the time this action was commenced.

In its answer the board pleaded as a defense a portion of section 14a of the State Civil Service Act as added by chapter 214, Statutes 1933. The trial court made a finding against the board. The latter claims it was contrary to the evidence. We think it was. There is no conflict in the evidence. The only question is one of law. That question is not hard to solve. Similar questions had been presented many years before the enactment of a general civil service statute. We refer to the litigation entitled *Kennedy* v. *Board of Education,* 82 Cal. 483 [22 Pac. 1042]. The result of that action was that the defendant had to pay two salaries—one to the person discharging the duties and the other to Kate Kennedy, the person held entitled thereto. The State Civil Service Statute being general, it is clear that, in its execution, because of the possibility of errors being made by the human mind, the legislature considered that many similar questions might arise. Hence, the reason for enactment of section 14a. While the instant case does not present the question of the payment of two salaries, it does present the question of unlawful deficits being incurred when, in the absence of such litigation no deficit would have been incurred. In other words, if a timely objection had been made the contract would have been re-

scinded, the plan abandoned, all crews discharged, and the public credit maintained. But after the board had been placed in a position where it could not protect itself, and after the plaintiffs had taken full advantage of the purported contract, they now seek to repudiate said purported contract, to question it in its entirety, and to be paid for services which they never rendered. They may not now do so. Said section 14a in part provides as follows: "Any action brought against the appointing power of the civil service commission by an employee laid off must be brought and served within one year, but in the event of such action said employee can not be compensated for the time subsequent to the date of lay off unless such action is filed and served within ninety days from the date of lay off." The last instalment claimed to be due and payable fell due on or before September 1, 1934. The last day on which such an action might legally be filed was December 1, 1934. No action was commenced prior to December 28, 1934. That was nearly thirty days late as to the last item claimed. But it was nearly two years and one-half late as to the first item claimed in the first action. As to all items claimed in the second action the delays were longer. Under the uncontroverted facts the finding on the defense of the statute of limitations should have been in favor of the defendant board.

The judgment is reversed.

Nourse, P. J., and Spence, J., concurred.

A petition by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on January 28, 1937.