[Civ. No. 16229.   Second Dist., Div. One.   May 4, 1948.]

RALPH J. SCOTT, Appellant, v. CITY OF LOS ANGELES et al., Respondents.

[Civ. No. 16230.   Second Dist., Div. One.   May 4, 1948.]

CHARLES VERNAND, Appellant, v. CITY OF LOS ANGELES et al., Respondents.

George E. Cryer, James A. Starritt and R. Alston Jones for Appellants.

Ray L. Chesebro, City Attorney, Bourke Jones, Assistant City Attorney and Robert J. Stahl for Respondents.

DORAN, J.—The companion actions involved herein are designated as complaints "For Accounting in Equity," and were instituted, respectively, by appellant Scott, a city fireman, and appellant Vernand, a city policeman. According to the findings of the trial court as set forth in appellant's brief, the respondent city, during the years 1932-1933, 1933-1934, 1934-1935, and 1935-1936, "represented to its police and firemen that it did not have sufficient revenue to enable it to retain the entire force and pay them their full salaries as fixed by Initiative Ordinance, and that they must accept a cut, in salary amounting to ten percent in 1932-1933, and to nine per cent thereafter, or submit to such reduction in personnel as would result in an equal reduction in the outlay for salaries." The proposed cut in salary was accepted by the personnel "in full and complete discharge and acquittance of all claims and demands for the services rendered . . . solely by reason of said representations," according to the findings. The trial court also found that the representations so made, were true.

The appellants' briefs are largely devoted to the proposition that the city of Los Angeles was guilty of fraud; that at the close of each fiscal year involved herein, "respondent city had, in its various operating funds, *surplus money . . .* transferred to its reserve fund." Appellants also insist that during the period in question, "respondent city was accumulating a huge back-log of revenue in the form of delinquent taxes amounting to more than seven million dollars," which, according to appellants' theory, constitute "trust funds" for the payment of policemen's and firemen's rightful wages withheld by way of the aforementioned deductions. Relying on these averments, it is alleged that "Telling its police and firemen *year after year,* that its revenues were insufficient to enable the city to retain the entire personnel and pay them the full amount of their salaries as fixed by law, *while piling up a huge back log* of revenue during each of said years *constituted fraud in a most aggravated* form." (Appellants' italics.)

The respondents' brief submits "that appellants are not entitled to an accounting or any other relief for the reason that the City is not and never has been indebted to appellants for the salaries voluntarily waived by them and no funds in the hands of the City are impressed with any trust for the payment of salaries so waived, because": (1) the voluntary waiver of salary was not induced by any fraud; "(2) by virtue of Section 186½ of the City Charter, appellants accepted their payroll checks in full satisfaction of claims for services"; (3) appellants are in fact seeking recovery of money, which actions are barred by laches, the statute of limitations, and appellants' failure to file claims in compliance with the City Charter; (4) that delinquent taxes subsequently collected, do not constitute a trust fund for appellants' benefit.

Whatever may be the rule in other jurisdictions, the courts of California have apparently upheld the validity of waivers by public officers and employees of the full amount of salary as fixed by statute or ordinance. In *Gamble* v. *City of Sacramento* (1941), 43 Cal.App.2d 200 [110 P.2d 530] a police officer sought a writ of mandate to compel payment of salary for days worked without pay pursuant to an agreement to donate a designated number of days of service, made in order to avoid a reduction in force personnel. The appellate court, reviewing previous cases on the subject, held that such an agreement was not void as against public policy; also,

that a claim for unpaid salary is not a book or credit account within the meaning of the statute of limitations, but a cash transaction governed by a charter provision requiring presentation within six months.

Appellants' brief seeks to distinguish the present case, based upon a trust theory, from actions of debt or assumpsit to directly recover unpaid salary. Indeed, appellants submit that the theory here adopted is ''A new approach to an old problem . . . an entirely new method by which a long standing wrong, flagrantly fraudulent in its nature, may be righted in entire accord with established principles of law and equity.'' But, obviously, calling something by a different name does not change its inherent nature, nor can mere terminology create so-called legal rights where no such rights exist. Such appears to be the situation in the instant litigation.

In respect to the issue of fraud, upon which appellants' case must, in the final analysis, stand or fall, the record discloses substantial evidence in support of the trial court's finding that no fraudulent representations were made. In such a situation the well-established rule prevents an appellate court from attempting a further review of the evidence, and the finding must be sustained regardless of the fact that the record also contains conflicting evidence which if believed, would support appellants' contentions.

In the instant case, respondents' brief, commenting on the testimony of the chief engineer of the fire department points out that the tentative budget prepared by the chief and approved by the board of fire commissioners, was duly considered by the budget committee in the mayor's office, and both the mayor and the director of the bureau of budget and efficiency stated that there would have to be a reduction in the amount of salaries. Thereafter the men in the fire department were so notified. A similar procedure was adopted in reference to the police department. As stated by respondent, ''the preparation and adoption of the annual budget is no 'star chamber' affair but is attended by ample publicity and participation by the executive, legislative and administrative departments of the city government.'' Nor do appellants' briefs suggest any logical reason why the city of Los Angeles or its officials should entertain any wrongful intent to deprive the firemen and policemen of compensation.

There is evidence indicating that the tax delinquency situation existing in those years of economic upset, required and rightfully received the most careful consideration. Neither

such consideration, nor the fact that a large amount of delinquent taxes was later collected by the city, can lend support to appellants' claim of fraud. The same may be said of the city's transference of certain money to its reserve fund at the close of the fiscal years, which reserve fund, it may be noted, materially decreased during the years in question. Careful consideration of the appellants' claim of fraud indicates that this contention is based largely, if not entirely, upon matters which have occurred since the making of the alleged false representations to policemen and firemen. In this connection it may be mentioned, in passing, that even if the city authorities had been guilty of using poor judgment in requesting the ten per cent reduction in salaries, such fact would by no means indicate fraud, but rather a possible excess of caution hardly censurable in view of the financial situation existing during the depression years. The appellants' position also seems to ignore the fact that the city had many departments and needs to provide for, other than those of the police and fire departments.

The trial court also found that appellants' causes of action were barred by the statutes of limitations, laches, and failure to file claims in compliance with the city charter. The salary waivers involved herein, encompassed the period between 1932 and 1936; appellants' complaints were filed in 1944; it is not alleged that the charter provisions in reference to filing claims were complied with. As hereinbefore indicated appellants insist that the present actions are not for money, but "are actions in equity to establish fiscal year funds," alleging that "respondent city is a trustee of the huge balances of revenue resulting from the collection of" delinquent taxes. However, it is true, as said in respondents' brief, that "No matter what appellants denominate their respective actions, or the theory on which they rely, the fact is obvious that what is sought is recovery of a sum of money representing the difference between their salaries at rates fixed by ordinance and what they actually received." Although perhaps ingenious in concept, the trust theory here advanced is, so far as the present controversy is concerned, without basis either in law or in fact. If appellants possessed any cause of action, the same is, as found by the trial court, long since barred by limitation and laches. Any other conclusion than that here reached, would, in the language of the findings, result in "serious detriment . . . to the City of Los Angeles

due to the confusion that would be caused in the annual financing of the city government." And, in view of the state of the record, disclosing as it does, amply sufficient evidence in support of the findings and judgment, no interference with that judgment is warranted.

The judgment is affirmed.

York, P. J., concurred.

WHITE, J.—I dissent.

I cannot agree with that portion of the majority opinion wherein it is said:

"In respect to the issue of fraud, upon which appellants' case must, in the final analysis, stand or fall, the record discloses substantial evidence in support of the trial court's finding that no fraudulent representations were made."

The gist of appellants' case is that they were induced to sign waivers of a portion of their monthly salaries as fixed by law, on the representations that during the years in question the city's revenues were insufficient to enable it to pay policemen and firemen in full for their services and at the same time retain the entire force. Appellants challenged the truth of these representations, and as I view the record, showed that the city's revenues were amply sufficient to have enabled it to pay the employees in full.

That the alleged representations were made is conceded. Therefore, the truth or falsity of such representations concerning the sufficiency of the city's revenues becomes the crux of the cases now before us.

The evidence established and the court found:

"That it is also true that in each of the following fiscal years money was received by the City of Los Angeles in payment of delinquent taxes for prior fiscal years and that at the close of each of said following fiscal years there was surplus money in various funds over and above the amount of outstanding demands and liabilities payable out of such various funds which was transferred to the reserve fund in accordance with Section 382 of the Charter of the City of Los Angeles, as follows:

| | |
|---|---|
| "1932-33 | $ 27,351.22 |
| 1933-34 | 512,185.19 |
| 1934-35 | 1,249,296.79 |
| 1935-36 | 1,256,859.29 |

"That it is further true that the amount of taxes uncollected at the close of each of said fiscal years was as follows:

"1932-33          $2,678,794.65
1933-34          2,101,634.58
1934-35          1,631,913.80
1935-36          1,156,233.06

and that more than 95 per cent of the foregoing amounts of delinquent taxes for each of the aforesaid fiscal years, except 1935-36, have since been collected with penalties for delinquency, and as to the fiscal year 1935-36 more than 94 per cent has been collected, and that of the taxes levied for and remaining uncollected at the close of said fiscal years more than 60 per cent were allocated in the annual budget to the support of the budgetary departments of the city government, including the Police Department."

Section 382 of the city charter referred to in the foregoing findings of the court, insofar as here pertinent, provides that:

"At the close of each fiscal year the Controller and Treasurer shall transfer all surplus money remaining in each fund over and above the amount of outstanding demands and liabilities payable out of such fund to the 'reserve fund', . . . except such surplus money as is in the several bond funds, interest and sinking funds, trust funds, the fire and police pension fund, the harbor revenue fund, the library fund, the park fund, the permanent improvement fund, the playground and recreation fund, the power revenue fund and the water revenue fund, but the Council may by ordinance, direct that any or all such surplus money in either the harbor revenue fund, the power revenue fund or the water revenue fund be transferred to such reserve fund with the consent of the board in charge of such fund, but not otherwise."

It is to be noted that as a prerequisite to its transfer to the "reserve fund," under the charter provisions such money must be "surplus moneys remaining in each fund over and above the amount of outstanding demands and liabilities payable out of such fund."

The evidence shows and the findings establish that the foregoing total amount of "surplus moneys" thus transferred to the "reserve fund" during the years in question was $3,045,-692.49, or more than enough to have paid to all police and firemen their full salaries as fixed by initiative ordinance, without any reduction whatever.

The fact that collection of delinquent taxes was deferred by

reason of delayed redemption of property from tax sale, does not alter the fact that the avails, when received into the city treasury become a part of the fiscal year fund for the year for which the tax was levied (*Newton* v. *Brodie,* 107 Cal.App. 512, 518 [290 P. 1058] ; *City of New Orleans* v. *Fisher,* 180 U.S. 185 [21 S.Ct. 347, 45 L.Ed. 485, 492]).

I have no quarrel with the holding in the majority opinion that public officers and employees may validly waive the full amount of their salary as fixed by statute or ordinance. But certainly no validity can attach to such waivers if they are obtained by false representations on the part of representatives of the employer political subdivision.

Respondent's contention that the causes of action now engaging our attention are barred by the statute of limitations is, in my opinion, without merit. The applicable statute is subdivision 4 of section 338, Code of Civil Procedure, which provides for a three-year period of limitation. Without conflict, the evidence establishes that appellants did not discover the facts constituting the alleged fraud until some three or four months before the instant actions were instituted.

Law and good morals should be one and inseparable. To me it seems unconscionable that the police and firemen should be required to waive 10 per cent and later 9 per cent of their salaries on the representation that the city's revenues were insufficient to pay them the salaries provided by initiative ordinance, when in truth and in fact the city during all of said years was transferring to the "reserve fund" "surplus moneys" remaining in various funds, over and above the amount of outstanding demands and liabilities payable out of such funds. And when the collections of delinquent taxes, properly allocated to the liabilities of the fiscal year for which they were levied, were more than sufficient to pay the city's police and firemen the full amount of salaries authorized by ordinance.

In my opinion, the judgment should be reversed and the causes remanded with directions to the court below to take appropriate steps, in the exercise of its equity jurisdiction, to compel payment to officers and members of the police and fire departments of the full amount of salary withheld from them during the fiscal years 1932-1933 to 1935-1936 together with the interest thereon.

A petition for a rehearing was denied May 25, 1948. White, J., voted for a rehearing. Appellant's petition for a hearing by the Supreme Court was denied July 1, 1948.