[Civ. No. 17131.   First Dist., Div. Two.   Oct 25, 1956.]

TERENCE J. O'SULLIVAN et al., Appellants, v. CITY AND COUNTY OF SAN FRANCISCO et al., Respondents.

Todd & Todd and Henry C. Todd for Appellants.

Dion R. Holm, City Attorney, and William F. Bourne, Deputy City Attorney, for Respondents.

THE COURT.—Plaintiffs brought this action to enjoin defendant city, its mayor and the members of its civil service

commission from ''permitting, requiring or allowing'' employees of the city's street repair and street cleaning departments to sign waivers of premium pay for work done before 8 o'clock a. m.   After trial, judgment was entered in favor of defendants.   Plaintiffs appeal.

Section 151.3 of the charter of the city and county of San Francisco provides that when ''any groups or crafts'' establish a rate of pay in private employment through collective bargaining agreements with employers, and such rates prevail generally in private employment in San Francisco, the supervisors shall fix such rate of pay as the compensation for such groups or crafts in the employ of the city and county.

For some years before filing of this action, the collective bargaining agreement between General Laborers Union Number 261 and private employers had provided that work performed before 8 o'clock a. m. be paid for at one and one-half times the regular hourly rate.   Pursuant to the charter, these provisions had been carried into the ordinance fixing wages for city employees.   Another section of this same ordinance provided ''The working conditions established herein in accordance with the provisions of collective bargaining agreements shall be maintained in the City service except when a provision is specifically waived by the employee concerned. Such waiver shall be in writing and filed with the Civil Service Commission.''

The agreement for private employment provides that ''where . . . existing traffic conditions, job conditions, or weather conditions render it desirable to start the day shift at an earlier hour, such starting time may, with the mutual consent of the individual employer and local union . . . be made earlier.''   The city's wage ordinance contains the same provision, except that the phrase ''with the mutual consent of the individual employer and local union'' is omitted.

For more than 20 years most of the employees in the street cleaning and street repair bureau had commenced work before 8 a. m. and worked an eight-hour day with time off for lunch. The same practice continued until 1954, and no demand for premium pay for work before 8 a. m. was made until that year.   Then the union demanded premium pay for such employees.   At that time, defendant city announced its plan to start its street crews at 8 a. m.   It circulated waiver forms among employees in the laborers classification of the street department, announcing that those who did sign would start

work at the long-established hour, while those who did not sign would start work at 8. These forms were signed by a great majority of the employees in both branches of the street department. Each recites that the employee waives those provisions of the specified collective bargaining agreement for private employment which requires premium pay for work performed before 8 a. m., and recites the signer's agreement to accept pay at straight time for such work, and further provides "This waiver of premium compensation for work performed before 8:00 a. m. and not before 7:00 a. m. is made for the purpose of inducing the City and County of San Francisco to reestablish the 7:00 a. m. or 7:30 a. m. beginning time of the work day because such earlier beginning time is more convenient on account of existing traffic conditions, job conditions, or weather conditions."

There is testimony that the large number of trucks dispatched from the city yard would create severe traffic congestion at the yard if all employees began work at the same hour. The evidence also shows that traffic congestion on the city streets is greater from 8 to 9 a. m. Defendants offered testimony that no coercion was used by it to secure signature of the waivers. There was some evidence from which a contrary inference could be drawn, but the trial court found that "each employee who signed such written waiver did so freely and voluntarily." This finding upon conflicting evidence is not to be disturbed on appeal. (*Memorial Hospital Assn.* v. *Pacific Grape etc. Co.,* 45 Cal.2d 634 [290 P.2d 481].)

■ Appellants contend, however, that the waivers are void and unenforceable. They cite authorities from other jurisdictions for the rule that "a contract whereby a public employee agrees to perform services required of him by law for less compensation than that fixed by law is contrary to public policy and void." (160 A.L.R. 491.) But the California rule appears to be to the contrary (*Scott* v. *City of Los Angeles,* 85 Cal.App.2d 327 [193 P.2d 25] ; *Gamble* v. *City of Sacramento,* 43 Cal.App.2d 200 [110 P.2d 530] ; *Huntsman* v. *State Harbor Commrs.,* 17 Cal.App.2d 749 [62 P.2d 771] ; [hearing denied by Supreme Court in each of these three cases] ; *Myers* v. *City of Calipatria,* 140 Cal.App. 295 [35 P.2d 377] ; *Coyne* v. *Rennie,* 97 Cal. 590 [32 P. 578]), where the waiver is free and voluntary.

Even if the rule of other jurisdictions were followed in California, it would not aid appellants here. The rule is

based upon the acceptance by the employee of "less compensation than that fixed by law." But here the very ordinance fixing the compensation contains specific provisions for an earlier starting time and for written waiver by the employee. Many of the decisions from other jurisdictions relied upon by appellants are based upon the reasoning that an employing member of the executive branch cannot undo the legislative act of fixing the compensation of the employee (see *Glavey* v. *United States,* 182 U.S. 595 [21 S.Ct. 891, 45 L.Ed. 1247]). But such reasoning also is without application to the case at bar, for here the legislative body has itself made provisions for the waiver.

Appellants also argue that the city's acceptance of waivers constitutes a violation of sections 222 and 223 of the Labor Code. This contention is not renewed in the closing brief and may have been abandoned. ■ In any event, the rule seems clear that a chartered city is not subject to general law as to municipal matters covered by the charter. (*City of Pasadena* v. *Charleville,* 215 Cal. 384 [10 P.2d 745].) It is doubtful that the Labor Code applies to employees under a comprehensive municipal civil service system. (*Nutter* v. *City of Santa Monica,* 74 Cal.App.2d 292 [168 P.2d 741] [hearing denied by Supreme Court].)

The judgment is affirmed.