[No. B108502. Second Dist., Div. Five. May 10, 1999.]

STANLEY G. AUERBACH et al., Plaintiffs and Appellants, v.
BOARD OF SUPERVISORS OF THE COUNTY OF LOS ANGELES et
al., Defendants and Respondents.

## COUNSEL

Richard I. Fine & Associates and Richard I. Fine for Plaintiffs and Appellants.

De Witt W. Clinton and Lloyd W. Pellman, County Counsel, and Lawrence L. Hafetz, Deputy County Counsel, for Defendants and Respondents.

## OPINION

**GODOY PEREZ, J.**—Plaintiffs and appellants Stanley G. Auerbach, Norbert Bactowski, and Eloy Fierro (collectively appellants) appeal from the judgment entered against them and in favor of defendants and respondents the County of Los Angeles (the County), the Board of Supervisors of Los

Angeles County, and Supervisors Michael D. Antonovich, Yvonne Brathwaite Burke, Deane Dana, Gloria Molina, and Zev Yaroslavsky,[1] after a court trial on appellants' complaint for injunctive relief, damages and attorney's fees arising out of respondents' practice of transferring money from various funds maintained by the County (the Funds) to the County's general fund (the General Fund) to cover cash flow deficits in the general fund. Appellants contend respondents had no statutory or common law authority to make such transfers, the trial court erred in failing to apply the general law of trusts to the question, the challenged transfers violated terms of certain bond issues and violated article XVI, section 6 of the California Constitution. Alternatively, appellants contend that, if the transfers were lawful, the Funds from which the money was transferred were entitled to interest on those sums. After review, we affirm the judgment.

### FACTUAL AND PROCEDURAL HISTORY

The County is a political subdivision of the State of California and is governed by a five-member elected board of supervisors with legislative and executive authority. Respondents Antonovich, Burke, Dana, Molina and Yaroslavsky were the elected members of the Board during the relevant time period. The Board has authority to approve and administrate the County's budget. Appellants Auerbach, Bactowski and Fierro are all taxpayers living in the County.

The four-hour trial of the matter proceeded solely upon the parties' joint statement of undisputed facts for trial and joint exhibits, and the testimony of Patrick T. McMahon, Division Chief in the Auditor Control (the auditor). Inasmuch as there is no dispute as to the facts, we recite the pertinent facts as articulated in the trial court's written statement of decision.

The County relies on Tax and Revenue Anticipation Notes (TRAN's) for cash flow. Even with TRAN's proceeds of $1.15 billion in the 1994-1995 fiscal year, the General Fund was in a positive cash flow for only six months of the year. At issue are the propriety of certain routine cash management practices utilized by respondents through their auditor in operating the County's business during the 1994-1995 fiscal year. Pursuant to these practices, between January and June of 1995, the auditor made regular temporary transfers of cash from certain funds held by the auditor to the General Fund to cover temporary cash flow shortfalls in the General Fund.

---

[1]The board of supervisors and Antonovich, Burke, Dana, Molina and Yaroslavsky are referred to collectively herein as the Board; the County and the Board are referred to collectively as respondents.

The cash was taken over time from 16 different funds.[2] These Funds fall into four categories: (1) preapportioned property tax funds (Preapportioned Tax Funds); (2) County-owned funds (County-owned Funds); (3) the Departmental Trust Fund; and (4) the Pico Rivera Settlement Trust Fund. Of these 16 Funds, 12 are characterized by the County as trust or agency funds.[3]

Every fund was reimbursed no later than July 5, 1995, and the cash transfers had no effect on any amount budgeted under the County's fiscal budget or under any other appropriation required by law. The action raises two basic issues: (1) whether the County may temporarily transfer cash from various funds maintained by the County to the General Fund; and (2) whether the County must pay interest on the borrowed sums to the Funds from which the cash was transferred.

The Preapportioned Tax Funds and the Departmental Trust Fund are the County's primary sources for meeting the General Fund's cash flow requirements.[4] The Preapportioned Tax Funds were created by the auditor for accounting or bookkeeping purposes pursuant to the auditor's general enabling authority and consistent with the State Controller's Manual. These funds consist primarily of preapportioned property tax revenues held in suspense accounts awaiting apportionment pursuant to a statutory formula set forth in the Revenue and Taxation Code.

The County-owned Funds are funds belonging entirely to the County or are used entirely for County purposes.[5] The only such fund at issue in this action is the Payroll Revolving Account used for payroll-related charges.

---

[2] The auditor testified that there are approximately 1,800 funds that the auditor holds on behalf of various agencies and districts. The auditor does not use many of these for cash management purposes because they are legally restricted County funds or specifically belong to an agency or district. The auditor monitors these funds and ensures that interest is allocated to these funds whenever a contractual or statutory provision requires the auditor to do so. The 16 Funds from which the challenged transfers were made have no contractual or statutory provision for interest and all interest on these Funds is paid to the General Fund.

[3] These 12 are the: (1) Tax Collector's Trust Fund; (2) Treasurer/Tax Collector's Unsecured Property Fund; (3) Treasurer/Tax Collector Miscellaneous Fees and Taxes Fund; (4) Rebate Fund; (5) State Redemption Fund; (6) Auditor Unapportioned Money Fund; (7) Unapportioned Money Fund; (8) State Reimbursement Fund; (9) Trailer Coach Fees Fund; (10) Payroll Revolving Account; (11) Departmental Trust Fund; and (12) Pico Rivera Settlement Trust Fund. Appellants conceded at trial that transfers from the Pico Rivera Settlement Trust Fund and all of the County-owned Funds were lawful.

[4] The Pre-apportioned Tax Funds include the: (1) Tax Collector's Trust Fund; (2) Treasurer/Tax Collector Unsecured Property Tax Fund; (3) Treasure/Tax Collector Miscellaneous Fees and Taxes Fund; (4) Rebate Fund; (5) State Redemption Fund; (6) Auditor Unapportioned Money Fund; (7) Unapportioned Money Fund; (8) State Reimbursement Fund; and (9) Trailer Coach Fees Fund.

[5] The County-owned Funds include the: (1) Payroll Revolving Account; (2) Accumulated Capital Outlay Fund for Motor Vehicles; (3) Accumulated Capital Outlay Fund for Internal

The Departmental Trust Fund consists of revenues received by the County for services rendered, court fines and fees and other miscellaneous departmental collections. Interest on this fund is apportioned to the General Fund.

On June 28, 1995, appellants filed the instant action charging that respondents improperly transferred money belonging to non-County governmental entities. After a short bench trial, the trial court announced the following tentative decision: "I am going to give judgment for the [respondents] in this case. I think there is plain statutory authority for the transfers which are questioned in this lawsuit, namely Government Code section 25252. I think for the purposes within the meaning of that statute, the [F]unds in issue are [']county funds.['] And the statute clearly authorizes the transfers in issue. [¶] I rely upon *Jarvis* v. *Bloodgood* [(1972)] 25 Cal.App.3d[] 694 [102 Cal.Rptr. 212], to the effect that a fund must be irrevocably committed to a [use] before its transfer is prohibited. The mere keeping of a fund under a particular name by the County for a specific plan, future expenditure, is not enough to bind the County to such use. I am persuaded by the arguments as set forth in the County's excellent trial brief in this matter. [¶] With respect to the issue of whether the County must pay interest to the [F]unds upon repayment, which was a secondary issue here, I agree with the County's position that . . . there is no authority for the principal, that interest accretes to the amounts deposited. [¶] And that those monies—the interest must, therefore, be paid back to the individual fund which has been transferred. There is no authority for that. I think the authority cited by the County in [*City of Highland* v. *County of San Bernardino* (1992) 4 Cal.App.4th 1174 [6 Cal.Rptr.2d 346]] and others is good authority on that point. [¶] Judgment, therefore, must be given for the County." In a written statement of decision, the trial court responded to each of 18 issues raised by appellants in a request for a written statement of decision.

Appellants moved for a new trial on the grounds of abuse of discretion, insufficient evidence and a decision contrary to law. The motion for new trial was denied and appellants filed a timely notice of appeal.

## Discussion

### Standard of Review

■ The parties agree that the disputed issues present pure questions of law not involving the resolution of disputed facts and are therefore subject to

---

Services Department; (4) Productivity Investment Fund; and (5) Cable TV Franchise Fund. Of these funds, only the Productivity Investment Fund and the Cable TV Franchise Fund earn their own interest.

our independent review. (*Stratton* v. *First Nat. Life Ins. Co.* (1989) 210 Cal.App.3d 1071, 1083 [258 Cal.Rptr. 721] ["[A]n appellate court examines the facts presented to the trial judge on a summary judgment motion and independently determines their effect as a matter of law. [Citation.] We also conduct independent review of the trial court's determination of questions of law. We are not bound by the trial court's stated reasons, if any, supporting its ruling; we review the ruling, not its rationale. [Citation.]"]; see also *Edgemont Community Service Dist.* v. *City of Moreno Valley* (1995) 36 Cal.App.4th 1157, 1166 [42 Cal.Rptr.2d 823] [whether conduct is a violation of article XVI, section 6 of the California Constitution is a question of law subject to de novo review].)

*Government Code Section 25252*

■ Appellants contend Government Code section 25252 did not give respondents authority to make the challenged transfers. They argue that the legislative history of the statute, as well as case law, demonstrates this fact. We disagree.

Government Code section 25252, as it read in 1972 provided in pertinent part as follows: "The board of supervisors shall establish or abolish or may by resolution authorize the county auditor to establish or abolish such funds as are necessary for the proper transaction of the business of the county, and may transfer money from one fund to another, as the public interest requires."[6]

Board Order No. 10 adopted by the County board of supervisors on March 28, 1972, contains a resolution authorizing the auditor to establish or abolish funds and to transfer moneys to and from funds for transaction of county business. We agree with the trial court that this resolution satisfies the requirements of Government Code section 25252 and gave the auditor authority to make the challenged transfers.

The holdings in *Jarvis* v. *Bloodgood* (1972) 25 Cal.App.3d 694 [102 Cal.Rptr. 212] (*Jarvis*) and *Frommhagen* v. *Board of Supervisors* (1987) 197

---

[6]In its current form, Government Code section 25252 provides: "The board of supervisors shall establish or abolish, those funds as are necessary for the proper transaction of the business of the county, and may transfer money from one fund to another, as the public interest requires. The board may by resolution authorize the county auditor to perform one or more of these functions. The board of supervisors may, by resolution, authorize the auditor to transfer money from one fund to another if the board of supervisors has authority over each fund. Wherever reference is made elsewhere in the law to a county salary fund such reference may, upon order of the board of supervisors, after July 1, 1947, be deemed to refer to the county general fund."

Cal.App.3d 1292 [243 Cal.Rptr. 390] (*Frommhagen*) support this conclusion. In *Jarvis*, the Board transferred $100,000 from a budget item identified as the " 'Capital Project . . . Compton County Building . . . Land Acquisition' " fund to a fund "for the stated purpose of restoring '. . . funds for Music Center Opera Association which were deleted in the final budget changes . . . .' " (*Jarvis, supra,* 25 Cal.App.3d at p. 696.) Jarvis, a taxpayer, challenged the validity of the appropriation. (*Id.* at pp. 696-697.) The reviewing court approved the appropriation citing with approval a 1950 Attorney General Opinion which stated: " 'Until the fund is irrevocably committed, the fact that it is carried on the county books under a particular name indicative of a hope or plan for future expenditure, is but a matter of administrative or bookkeeping convenience. Such a fund is available for the general purposes of the county. Gov[]. Code, [§] 25252; *Higgins* v. *City of San Diego,* 131 Cal. 294, 302 [63 P. 470] (1901); *Newton* v. *Brodie,* 107 Cal.App. 512, 520 [290 P. 1058] (1930).' " (*Id.* at p. 698.)

In *Frommhagen, supra,* 197 Cal.App.3d 1292, the court held that a county may use surplus funds assessed in a county service area for other governmental purposes.[7] In so holding, the court relied on the provision of Government Code section 25252 allowing the board to "transfer money from one fund to another, as the public interest requires." (197 Cal.App.3d at p. 1305, italics omitted.)

Appellants' attempt to distinguish these cases on the grounds that the money at issue in *Jarvis* and *Frommhagen* was "county money" whereas the money at issue in the case at bar was from funds held in trust by the county but not belonging to the county is unavailing. Government Code section 25252 does not make that distinction.

Also unavailing is appellants' reliance on *Potter* v. *Fowzer* (1889) 78 Cal. 493 [21 P. 118] (*Potter*). In that case, Mendocino County owed approximately $2,000 to the overseer of the road district. (*Id.* at p. 494.) There was no money in the road district fund to pay the debt. The board of supervisors ordered the county treasurer to transfer money from the general fund to the road district fund for the purpose of paying the debt. The treasurer refused to do so and the action was commenced to compel him to comply. The

---

[7]The term "county service area" was explained by the court as follows: "The county service area law gives counties an alternative method of providing services to unincorporated areas by allowing the counties to create special county service areas for the provision of services such as road maintenance, sewers, and other county services. [Citations.] For the types of services at issue in this case [citation], a county may determine the charge to be levied on each parcel in the service area by apportioning the total cost of the service to each parcel therein in proportion to the estimated benefits from such service to be received by each parcel. [Citation.]" (*Frommhagen, supra,* 197 Cal.App.3d at p. 1296, fn. omitted.)

treasurer's demurrer was overruled and when he declined to answer, judgment was entered against him. On appeal, the California Supreme Court held that the board had no power to order the funds transferred. (*Id.* at pp. 494-495.) It reasoned that the sums used for general county road purposes were limited by state statute to a percentage of the aggregate money collected from specified sources. According to the statute, all contracts made in excess of the estimated receipts from those sources were void. The board could not evade that limitation by temporarily transferring the money from some other county fund to the road district fund to pay a contract in excess of the limitation. (*Id.* at pp. 495-497.) The facts at bar are inapposite. Appellants have made no showing that the debts which were satisfied by money borrowed from the funds were not legitimate debts of the County.

## Common Law Authority

Appellants contend that there is no common law authority to make the challenged transfers. Inasmuch as we have found the transfers authorized under Government Code section 25252, we need not discuss whether there is additional authority under the case law.

## Interest on the Borrowed Cash

█ Appellants contend respondents had a duty to pay interest to the Funds from which money was transferred to the General Fund to meet the cash flow shortfall of the General Fund. They argue that interest payments were mandated by the common law of trusts as well as by Government Code sections 53635 and 53637.[8] We disagree.

In rejecting the contention that interest payments were required, the trial court explained in its statement of decision as follows: "The basic principle regarding interest is that 'in the absence of a statute which, in effect, accretes sums to amounts deposited, no claim arises for a return of other than the

---

[8]In pertinent part, Government Code section 53635 provides: "As far as possible, all money belonging to, or in the custody of, a local agency, including money paid to the treasurer or other official to pay the principal, interest or penalties of bonds, shall be deposited for safekeeping in state or national banks, savings associations or federal associations, credit unions, or . . . may be invested in the investments set forth below. . . ."

Government Code section 53637 provides in pertinent part: "The [money described in section 53635] shall be deposited . . . with the objective of realizing maximum return, consistent with prudent financial management . . . except that money shall not be deposited in any state or federal credit union if a member of the legislative body of a local agency, or any person with investment decisionmaking authority of the administrative office, manager's office, budget office, auditor-controller's office, or treasurer's office of the local agency, also serves on the board of directors, or any committee appointed by the board of directors, or the credit committee or supervisory committee, of the state or federal credit union."

original deposit.' See [*Metropolitan Water Dist.* v. *Adams* (1948) 32 Cal.2d 620, 628 [197 P.2d 543]; *Fresno Fire Fighters* v. *Jernagan* (1986) 177 Cal.App.3d 403, 408 [222 Cal.Rptr. 886]] (citing Civil Code § 1915 for this proposition). [¶] The Court finds that [appellants] have provided no State or local statute, or any other authority, that would require the payment, or repayment, of interest to the types of Funds in question. [¶] Specifically as to the Pre-Apportioned Tax Funds, the major source of the County's cash transfers, the apportionment statutes are silent regarding interest."

Civil Code section 1915 provides: "Interest is the compensation allowed by law or fixed by the parties for the use, or forbearance, or detention of money." Appellants concede that "the apportionment statutes are completely silent as to the interest accrued." This silence cannot be interpreted to require interest payments from the General Fund. Contrary to appellants' assertion, the broad language of Government Code sections 53635 and 53637 does not preclude transfers of cash from any fund to the General Fund or require that interest be paid to the fund from which the money was borrowed. Appellants cite to no authority holding otherwise.

Appellants' reliance on *Fresno Fire Fighters* v. *Jernagan* (1986) 177 Cal.App.3d 403 [222 Cal.Rptr. 886] (*Fresno*), for the proposition that the Funds from which the moneys were transferred are entitled to interest on those sums is misplaced. The issue in *Fresno* was whether a private person or entity is entitled to interest earned on moneys that person or entity is statutorily required to deposit in a civil action, or whether interest earned on such monies may be retained by the county as part of its general fund. The case involved a $25,000 cash undertaking deposited by a private litigant as a statutory prerequisite to obtaining a preliminary injunction. The appellate court held interest on deposits in civil actions belonged to the owner of the money, that is, the person or entity who was responsible for depositing it. (*Id.* at p. 409.) It held further, however, that the county could retain interest accrued on cash bail deposits in criminal actions, reasoning that such amounts are deposited for the public purpose of securing the attendance of the defendant at all future proceedings and could legitimately be used for the support of the courts of the county. (*Id.* at p. 412.) Here, the funds at issue are, like bail deposits, deposited and held for various public purposes. They are not, like a cash undertaking in a civil action, held only for the benefit of a private person or entity. Thus, far from supporting appellants' contention that the Funds from which cash was transferred to the General Fund were entitled to interest, *Fresno* actually supports the contrary conclusion.

*Government Code Section 53724, Subdivision (e)*

 Appellants contend the trial court erred in finding that the transfer did not violate Government Code section 53724, subdivision (e), which

provides that "revenues from any *special tax* shall be *used* only for the purpose or service for which it was imposed, and for no other purpose whatsoever." (Italics added.) They argue: (1) the Funds from which the monies were transferred to the General Fund held money levied by "special taxes" within the meaning of that statute, and the trial court misapplied the definition of "special taxes"; and (2) temporary use of the monies to cover cash flow shortfalls in the General Fund constituted "use" of such monies within the meaning of the statute. Inasmuch as we agree with the trial court that the monies were not "used" in contravention of the statute, we need not address the issue of whether the source of the monies were "special taxes."

■ "In construing a statute, 'we strive to ascertain and effectuate the Legislature's intent. . . . " 'Words must be construed in context, and statutes must be harmonized, both internally and with each other, to the extent possible.' " ' " (*Farm Sanctuary, Inc.* v. *Department of Food & Agriculture* (1998) 63 Cal.App.4th 495, 505-506 [74 Cal.Rptr.2d 75].)

■ In its written statement of decision, the trial court explained: "For purposes of [Government Code section] 53724[, subdivision] (e), the Court concludes that 'use' means appropriation and expenditure. The evidence in this action was clear that the temporary transfers had no effect on any appropriation or expenditure under the County's fiscal budget or under any other appropriation required by law. Thus, [Government Code section] 53724[, subdivision] (e) has no bearing in this matter. [¶] . . . Although [appellants] allege that the subject [F]unds contain 'special taxes,' [appellants] provided no evidence as to what portion, if any, of the [F]unds in fact contain special taxes, as that term is defined in the case authorities. The Court finds that Exhibit 10 of the Joint Exhibits consists primarily of special benefit assessments, and therefore are not special taxes under the case law." (Fn. omitted.)

Appellants' definition of the word "use" is unreasonably hypertechnical. To interpret Government Code section 53724, subdivision (e) in the manner urged by appellants would be to make that statute inconsistent with Government Code section 25252. The latter statute authorizes the transfer of money from one fund to another. It does not limit that authority to funds the revenues of which are derived from general taxes. Further, Government Code section 53724, subdivision (e) does not state that its limitation on the use of funds applies notwithstanding the authority to transfer monies between funds granted by Government Code section 25252. A reasonable construction of Government Code section 53724, subdivision (e), which would harmonize that statute's provisions with those of Government Code section 25252, is that the Legislature intended to preclude any use of the

revenue which would permanently deprive the intended recipient project or program of the Funds. Appellants have made no showing that the transferred monies were not ultimately used for the purpose for which the tax was imposed. On the contrary, there is no dispute that the temporary transfer "had no effect on any appropriation or expenditure." Accordingly, we agree with the trial court's conclusion that the transfers did not violate Government Code section 53724, subdivision (e).

*General Law of Trusts*

█ Also without merit is appellants' contention the trial court's failure to apply the general law of trusts to find respondents breached their fiduciary duty by making the transfers constituted prejudicial error. They argue, "Since the codes and statutes are silent as to whether the transfers from the [F]unds at issue to the County's General Fund are legal, the general law of Trusts governs."

It is clear from the trial court's written statement of decision that it alternatively found the challenged transfers to have been appropriate under the common law of trusts as well as within the County's statutory authority. We agree with the conclusion.

In comparing funds deposited in the county treasury to funds deposited in a bank, the court in *Buena Vista W. S. Dist.* v. *Shields* (1932) 126 Cal.App. 241 [15 P.2d 861], held that cash in various county funds was fungible and cash credited to one fund could be temporarily used to pay off the indebtedness of another fund so long as the treasurer properly kept track of the various funds. (*Id.* at pp. 250-251.) Here, we likewise find the challenged transfers were lawful under the common law of trusts as well as statutory authority.

*Bond Issues*

█ Appellants contend the trial court erred in finding that the County did not violate the terms of certain bond issues by making the challenged transfers. They argue that "the monies in the trust funds and all interest earned thereon were pledged to repay the TRANs as security. [¶] However, the same monies were also 'borrowed' by the [r]espondents to cover General Fund cash deficits. [¶] Such a 'borrowing' . . . constitutes a 'double-dipping' in violation of the terms of the bond issue."

In its statement of decision, the trial court wrote: "[Appellants] provided no evidence at all regarding the terms of any BANS or COPS[9] that were violated, or even issued, by the County. [¶] As to the TRANs, [appellants] assert that the County pledged non-County revenues from the subject Funds as security for the TRANs. The [a]uditor testified to the contrary. No monies at all from the subject Funds were pledged in such capacity. Rather, the County pledged its own unrestricted taxes, income, and revenue as security for the TRANs. These [moneys] consist of the County's own post-apportioned share of property taxes revenues."

As we have already discussed, the County's temporary use of the Funds to cover shortfalls in the General Fund cash flow did not constitute an ultimate use of the Funds. Under the circumstances here present, it accordingly did not constitute "double-dipping."

*California Constitution, Article XVI, Section 6*

 Appellants contend the challenged transfers and failure to pay interest violated article XVI, section 6 of the California Constitution (hereinafter referred to as Section 6).[10] They argue the County improperly used the transferred moneys for purposes other than the original purpose intended for that money, was required to pay interest on the borrowed sums, the timing of the transfers was improper, and some of the transfers occurred before the Board passed a resolution authorizing them. Respondents counter that this court should not consider the constitutional question because other grounds are dispositive of the issue. Alternatively, they argue Section 6 does not apply to transfers of monies between funds of the same county. Appellants, however, maintain that the moneys in the trust and agency funds are not county funds.

---

[9]BAN is the acronym for bond anticipation notes and COP is the acronym for certificates of participation. The Board adopts debt limits for those types of obligations. Those limits are "expressed as a percentage of the total [C]ounty [B]udget and represent the maximum amount of debt service which may be incurred during a fiscal year."

[10]In pertinent part, Section 6 provides: "[N]otwithstanding the restrictions contained in this Constitution, the treasurer of any city, county, or city and county shall have power and the duty to make such temporary transfers from the funds in custody as may be necessary to provide funds for meeting the obligations incurred for maintenance purposes by any city, county, city and county, district, or other political subdivision whose funds are in custody and are paid out solely through the treasurer's office. Such temporary transfer of funds to any political subdivision shall be made only upon resolution adopted by the governing body of the city, county, or city and county directing the treasurer of such city, county or city and county to make such temporary transfer. Such temporary transfer of funds to any political subdivision shall not exceed 85 percent of the anticipated revenues accruing to such political subdivision, shall not be made prior to the first day of the fiscal year nor after the last Monday in April of the current fiscal year, and shall be replaced from the revenues accruing such political subdivision before any other obligation of such political subdivision is met from such revenue."

■ While it is true that constitutional questions should not be decided unless absolutely necessary (*Long Beach Lesbian & Gay Pride, Inc.* v. *City of Long Beach* (1993) 14 Cal.App.4th 312, 328 [17 Cal.Rptr.2d 861], citing *Palermo* v. *Stockton Theatres, Inc.* (1948) 32 Cal.2d 53, 65-66 [195 P.2d 1]), it is also true that "appellate courts have discretion to determine unnecessary issues of great importance to the parties which may serve to avoid future litigation when the issue presented is one of continuing public interest and is likely to recur. [Citation.]" (*Community Redevelopment Agency* v. *Force Electronics* (1997) 55 Cal.App.4th 622, 630 [64 Cal.Rptr.2d 209].) ■ Whether the County may use the challenged procedures is an issue likely to recur and of continuing public interest. Accordingly, we address it here.

The portion of Section 6 with which we are here concerned was derived from former article IV, section 31 of the California Constitution. Section 6 provides that the Legislature does not have the power to give or lend the credit of the state or of any city, county or other political subdivision of the state, in aid of or to any person or other entity. In pertinent part, it also authorizes the county treasurer to make temporary transfers from funds in the county's custody to meet the obligations of any political subdivision whose funds are in the custody and are paid out solely through the treasurer's office.

In an opinion discussing whether the City and County of San Francisco could make temporary transfers from a special street improvement fund to other funds in the city treasury, the Attorney General wrote: "The general prohibition of Article IV, section 31 [now Article XVI, section 6], has no particular effect upon transfers between funds of the county proper or of the city proper. Rather[,] it affects transactions between one political subdivision and another." (*Gasoline Tax Funds*, 20 Ops.Cal.Atty.Gen. 224, 226-227 (1952) [concluding that article XXVI confining gasoline tax revenues to direct use for highway and street purposes prohibits gasoline tax money received from the State Highway Fund to be temporarily transferred or lent to other funds in city treasury].) We agree with the Attorney General's opinion concerning Section 6.

A political subdivision is defined in Government Code section 8557, subdivision (c) as "any city, city and county, county, district, or other local governmental agency or public agency authorized by law." According to appellants, the sources of the challenged transfers were the Tax Collector's Trust Fund, Treasurer/Tax Collector Unsecured Property Tax Fund, Treasurer/Tax Collector Miscellaneous Fees and Taxes Fund, Rebate Fund, State Redemption Fund, Auditor Unapportioned Money Fund, Unapportioned

Money Fund, State Reimbursement Fund, Trailer Coach Fees Fund, Payroll Revolving Account, the Departmental Trust Fund, and the Pico Rivera Settlement Trust Fund. None of these are cities, counties, districts or local governmental or public agencies. Thus, none are political subdivisions and the challenged transfers do not come within the restrictions of Section 6.

### DISPOSITION

The judgment is affirmed.

Turner, P. J., and Armstrong, J., concurred.

Appellants' petition for review by the Supreme Court was denied August 11, 1999.