No. 57,633

UNIFIED SCHOOL DISTRICT NO. 490, Butler County, Kansas, *Petitioner*, v. BOARD OF COUNTY COMMISSIONERS OF BUTLER COUNTY, KANSAS; J. W. SIMMONS, ELDON PHILLIPS, and TOM LINOT, as members of said commission and their respective successors in office; BETTY ORR, as county treasurer of Butler County, Kansas, *Respondents*.

(697 P.2d 64)

Opinion filed March 28, 1985.

*Ervin E. Grant*, of Grant & Hart, P.A., of El Dorado, argued the cause and was on the brief for the petitioner.

*Robert J. O'Connor*, of Hershberger, Patterson, Jones & Roth, of Wichita, argued the cause and was on the brief for respondents and on the brief *amicus curiae* for Certain Kansas Counties.

*Patricia E. Baker*, senior legal counsel, and *Joseph M. Furjanic*, staff legal counsel, were on the brief *amicus curiae* for Kansas Association of School Boards.

*James M. Kaup*, of Topeka, was on the brief *amicus curiae* for League of Kansas Municipalities.

*Steven R. Wiechman*, of Topeka, was on the brief *amicus curiae* for Kansas Association of Counties.

The opinion of the court was delivered by

HERD, J.: This is an original action in mandamus brought by U.S.D. No. 490, Butler County against the Board of County

Commissioners of Butler County. This action is prompted by the refusal of Butler County officials to remit to U.S.D. No. 490 the interest portion of a settlement in United States District Court of the *Atchison, Topeka & Santa Fe Railroad Company, et al. v. Harley Duncan*, cases Nos. 80-4172, -4173, -4176, -4181 and -1690 (the 4-R Act cases). The county paid the tax portion of the settlement to petitioner but refused to pay the interest.

The 4-R Act cases were commenced June 30, 1980. Through consolidation and intervention the five cases involved Santa Fe, Union Pacific, St. Joseph and Grand Island, Rock Island, Missouri-Kansas-Texas, Burlington Northern, Chicago and Northwestern, Kansas City Southern, The Kansas and Missouri Terminal, Kansas City Terminal, Missouri Pacific, and St. Louis-San Francisco railway companies against the Kansas Department of Revenue, Michael Lennen (subsequently Harley T. Duncan), secretary of revenue, and Phillip W. Martin, director of property valuation. The Kansas counties were not original parties to the suit but 98 counties were joined as parties in the action on the 1979 taxes. They were then dismissed. Later 86 counties were permitted to intervene.

The 4-R cases were filed to challenge the assessed valuation of railroad transportation property. It was alleged to be out of ratio with other Kansas commercial and business property. The cases ultimately involved taxes for 1980, 1981, 1982, 1983 and 1984.

The trial court found in 1980 commercial and business property was assessed at 12.4% of true value while railroad transportation property was assessed at 30% of true value. The court ordered the assessment of railroad property reduced accordingly. The state defendants and county intervenors introduced evidence that the correct ratio was 24.48% rather than 12.4%. The defendants' and intervenors' evidence influenced the ultimate result.

The railroads paid their taxes pursuant to the court's order amending the assessment. For the years 1980 and 1981, the railroads paid 40% of the taxes levied against them, with earned interest paid to the counties. The other 60% was deposited with the clerk of the federal district court for investment until further order of the court. The distribution of this interest is not in controversy. After 1981, the railroads paid their taxes, as reduced by the court, directly to each county and retained the balance

upon submission to the court of a verified financial statement showing sufficient net worth to indemnify the state and counties if it was later determined they owed more taxes.

Various issues raised at trial were appealed to the Tenth Circuit Court of Appeals. The counties and their attorneys were active participants in both the trial and the appeal of the cases. In fact, the county intervenors paid in excess of $500,000 for legal and expert witness fees.

The Tenth Circuit affirmed the district court in part and reversed it in part, remanding the cases for further proceedings. After intensive negotiation by the parties, on October 4, 1984, the trial court was informed the parties had agreed on a settlement placing the railroad assessment ratio for 1980 at 20.93%; for 1981 at 20.68%; for 1982 at 20.40%; for 1983 at 19.5% and for 1984 at 19.25%. Since the railroad property originally had a ratio of 30%, this was a considerable tax savings to them, but when compared to the 12.4% assessment ratio set by the court and upon which the railroads had been paying their taxes since 1980, it required them to pay an additional sum of considerable size. After agreeing on the assessment ratio, it was then necessary to determine the kind and rate of interest on the additional taxes owed but unpaid. The parties eventually agreed the interest should be calculated as simple interest, even though the delay in payment extended beyond one year from the date the taxes were owed. They also agreed the rate should be the treasury bill rate rather than Kansas judgment rate and should be calculated from the date of original delinquency to October 31, 1984. Judge Richard Rogers confirmed the compromise settlement of the parties. The settlement amounted to $23,463,595.33. Interest is $4,036,034.43 of the total. This is the interest in controversy. From the settlement the Butler County Treasurer paid petitioner its proportionate share of unpaid taxes in the amount of $40,365.23. However, the county treasurer refused to pay the interest which had been earned on that amount while the money was retained by the railroads pending the outcome of the litigation. The interest on petitioner's share of the taxes amounted to $8,677.76.

Petitioner brings this action seeking an order of this court commanding the county treasurer to pay the school district its share of interest from the settlement.

Is mandamus a proper remedy? Neither party questions the appropriateness of mandamus in this case. This court has held:

"Mandamus in the Supreme Court is a proper remedy where the essential purpose of the proceeding is to obtain an authoritative interpretation of the law for the guidance of public officials in their administration of public business, notwithstanding the fact there also exists an adequate remedy at law." *Board of Sedgwick County Comm'rs v. Noone*, 235 Kan. 777, Syl. ¶ 1, 682 P.2d 1303 (1984).

There is no question that this issue affects many counties in the state and many counties are waiting to make a determination based upon this action. Therefore we hold mandamus is proper.

The next issue is whether payment of interest to the petitioner on withheld taxes is provided for by statute.

Petitioner argues the general rule is that in the absence of a statute to the contrary, interest follows principal. Hence, the taxing subdivisions are entitled to the interest as well as the principal. See *New Orleans v. Fisher*, 180 U.S. 185, 45 L.Ed. 485, 21 S.Ct. 347 (1901). The question then is whether there are statutes to the contrary. There are three statutes which the parties rely upon in this case. These statutes are K.S.A. 1984 Supp. 12-1678a and K.S.A. 79-2004 and 79-2004a.

K.S.A. 1984 Supp. 12-1678a states undistributed taxes of any taxing subdivision may be invested by the board of county commissioners and retained by the county treasurer. The County argues the settlement constituted taxes and that through negotiation it obtained interest on the delayed payment of taxes as if the principal were invested pending the outcome of the litigation. It claims the taxes were therefore "constructively" invested by the county commissioners and the interest belongs to them.

Initially, there is no question that the money was not invested by the county commissioners. Proof of that lies in the fact that K.S.A. 1984 Supp. 12-1678a provides the ways a county may invest such money by reference to K.S.A. 1984 Supp. 12-1675 and 12-1676. Both of these statutes are very explicit. Permitting a taxpayer to retain his taxes under a type of indemnification agreement obviously is not an investment of the taxes in a technical sense. It is, however, a method of obtaining interest on the unpaid taxes and provides the same result as an investment by a county.

*Amicus* League of Kansas Municipalities argues K.S.A. 12-1678a is not applicable because these were not taxes. Rather, the

League argues, it was a court-approved negotiated settlement similar to a judgment including prejudgment interest. This argument ignores the obvious: the payment of the principal was made up of taxes owed by the railroads to the counties. *Amicus* Association of School Boards, however, argues that while it may be taxes, it was not "undistributed" taxes and that the statute clearly implies the only undistributed taxes which can be invested are those taxes collected but undistributed *after* the county treasurer distributes the taxes collected for each taxing subdivision. In this case, not only had the taxes from the railroad property due the school districts never been distributed, but also the taxes had not been collected. Hence, the facts do not completely fit the statutes.

The Association of School Boards further argues the statutes imply the county commissioners cannot invest taxes that have been collected for other subdivisions. For support Association of School Boards cites K.S.A. 1984 Supp. 12-1675 which states the ways subdivisions may invest public monies. The Association misconstrues this statute. This statute pertains to surplus in the hands of a taxing subdivision after distribution to it by the county. Here, the taxes had not been distributed. Thus, this statute is not authority for the subdivision's right to the interest in controversy.

The parties next discuss the applicability of K.S.A. 79-2004 and 2004a to this case.

K.S.A. 79-2004 provides for the accrual of interest on delinquent real property taxes from the delinquency date for such tax payment until the payment is made or until the real estate is sold at foreclosure. K.S.A. 79-2004a is a companion statute providing for accrual of interest on delinquent personal property taxes. Both statutes provide "all interest herein provided for shall be credited to the county general fund." Hence, the counties argue, the statute specifically states interest earned on delinquent taxes shall be paid to the county general fund.

*Amicus* Kansas League of Municipalities counters by arguing the payment here could not constitute delinquent taxes since it was the railroad which commenced the litigation. The League reasons that the railroad would not have started litigation to determine it owed more taxes. The taxing subdivisions also argue, as they did under K.S.A. 1984 Supp. 12-1678a, that the

payment was a settlement of a lawsuit, not a payment of taxes. However, again, there is no question the settlement constituted taxes. As *amicus* Kansas Association of Counties argues, the character of interest on back taxes does not change because a taxpayer who is delinquent files a suit to determine the validity of the taxes. In *Atchison, T. & S. F. Ry. Co. v. Lennen*, 531 F.Supp. 220 (1981), the court deemed the amount in controversy to be delinquent. 1980 taxes noting that even though litigation was instituted, the taxes were still delinquent.

*Amicus* Kansas Association of Counties further argues K.S.A. 1984 Supp. 12-1678a(d) and K.S.A. 79-2004(b) specifically allow counties to enter into agreements providing for the distribution of interest earnings. Hence, Association of Counties argues if it were not the legislature's intent that the interest belong to the counties, it would not be necessary to grant counties the authority to enter into agreements for the distribution of interest to the taxing subdivisions.

An examination of K.S.A. 1984 Supp. 12-1678a, and K.S.A. 79-2004 and -2004a discloses the legislative scheme for managing interest earned on undistributed tax funds and interest on delinquent taxes. In each, the legislature authorized the county to keep the interest. We find there are logical reasons for such a legislative decision. The county is the local taxing unit. Cities, townships, school districts, hospital districts, cemetery districts, and all other local units of government are taxing subdivisions of the county. Each of the subdivisions prepares its budget, then calculates the levy needed to produce the budgeted amount on the assessed values provided it by the county.

After the subdivision budgets are submitted to the county, they are all compiled into one budget by the county and the final total levy determined by the county. The county is charged with the responsibility for collecting the taxes, banking the receipts and accounting for them. The distribution of taxes to taxing subdivisions is the county's job. The duty to collect delinquent taxes falls on the county. Actions to sell property for unpaid taxes are the county's obligation. Tax foreclosure actions are county actions. The administration of the ad valorem taxing system in Kansas is performed by the counties. Hence, authorizing the counties to receive the interest from invested taxes and from delinquent taxes is logical. Past efforts by subdivisions to obtain

legislation requiring counties to share interest on idle funds have failed.

In this case the railroad taxes became delinquent, not through oversight or obstinance, but because the taxpayers had correctly concluded their taxes were unlawfully high in relation to other taxpayers. The court first determined the railroads were being overtaxed by 60%. The railroads paid in the 40% of their taxes determined to be owed. They retained the remainder. On appeal it was determined at the urging of state defendants and intervenor counties that the value of other business and commercial personal property should also be used in comparing the railroads' assessment. Since personal property is reappraised annually, as compared to real estate which is reappraised infrequently and thus is out of ratio, it was apparent to the parties upon remand that the railroad assessment would increase from the 12.4%. Evidence was taken and the parties commenced negotiation with the realization the amount of taxes previously paid was not adequate. The difference between the taxes paid and the taxes owed constituted delinquent taxes. The final determination of the additional taxes owed for 1980, 1981, 1982, 1983 and 1984 by the railroads was accomplished by compromise and settlement among the parties as was the determination of the kind and amount of interest.

In addition to the legislative scheme entitling the counties to interest on withheld taxes, there are compelling equitable reasons which justify such a holding. The local governmental responsibility for intervention in the lawsuit properly fell on the counties. The counties expended a large amount of money in their efforts to prevent the railroad ratios from being placed too low. They were successful. The counties deserve the benefits of their investment. The agreed-upon interest derived from the delinquency provides a partial recovery. Since such interest is applied as a credit on next year's budget and reduces the levy for every county taxpayer, the benefit is shared by all who expended the funds in the lawsuit.

We hold Butler County is entitled to retain the interest received from the settlement of the 4-R Act cases. The petition for mandamus is denied.