NEWMAN, Circuit Judge,
concurring in part, dissenting in part.
I agree that the United States is the appropriator of the funds for which Texas State Bank claims compensation; thus it is irrelevant whether the Federal Reserve System is or is not a Non-Appropriated Funds Instrumentality (NAFI), for the requirement that the earnings on Texas State Bank’s deposits with the Federal Reserve Banks must be paid over to the United States Treasury is an action of the United States. Thus I concur in the court’s holding that the United States was properly before the Court of Federal Claims, and that the case was improperly dismissed on NAFI grounds.
The case should now be remanded to the Court of Federal Claims for determination of the substantive question. I respectfully dissent from the panel majority’s undertaking, sua sponte and at the behest of neither party, to decide the complex questions raised by the appropriation by the United States of the earnings on the banks’ Reserve deposits. This issue was not decided by the Court of Federal Claims, and no decision of the merits is presented for appellate review. It is as unfair to the parties as it is irregular for this court to reach out and decide this complex question upon the limited post-argument briefing we requested. This appeal was taken solely on the jurisdictional NAFI question and, having decided that question, the merits require adjudication by the Court of Federal Claims.
I
Since the substantive issue is nonetheless being decided by my colleagues, I must dissent from the panel majority’s misapplication of law and its unsupported conclusion. It is beyond debate that money is property, and that the earnings on that money are property. In Webb’s Fabulous Pharmacies, Inc. v. Beckwith, 449 U.S. 155, 101 S.Ct. 446, 66 L.Ed.2d 358 (1980) the Court stated:
The earnings of a fund are the incidents of ownership of the fund itself and are ■property just as.the fund itself is property.
449 U.S. at 164, 101 S.Ct. 446. Again in Phillips v. Washington Legal Foundation, 524 U.S. 156, 160, 118 S.Ct. 1925, 141 L.Ed.2d 174 (1998) the Court implemented this property right:
The question presented by this case is whether interest earned on client funds held in [Interest on Lawyers Trust Accounts] is “private property” of either the client or the attorney for purposes of the Takings Clause of the Fifth Amendment. We hold that it is the property of the client.
Again in Brown v. Legal Foundation of Washington, 538 U.S. 216, 235, 123 S.Ct. 1406, 155 L.Ed.2d 376 (2003) the Court held that the interest earned on deposits of clients’ funds is the property of the client, not of the state. Although the Court recognized that when no interest was earned none had to be paid, it is undisputed that substantial interest is here earned.[1]
*1382 Principal and interest are property. The post-argument brief filed by Texas Bank contained expert testimony explaining that placement of a specified percentage of banks’ funds in Reserve is compulsory, that minimum deposits must be met or a penalty paid, that the banks own their Reserve deposits, and can withdraw them and trade them in the “Fed funds market.” Indeed, it is not disputed that the banks own their reserve deposits. They also own the interest earned by those deposits. “The rule that ‘interest follows principal’ has been established under English common law since at least the mid-1700’s.” Phillips, 524 U.S. at 165, 118 S.Ct. 1925. The Court in Phillips cited representative cases from the various states, holding that the interest is the property of the owner of the principal:
E.g., Freeman v. Young, 507 So.2d 109, 110 (Ala.Civ.App.1987) (“The earnings of a fund are incidents of ownership of the fund itself and are property just as the fund itself is property” (internal quotation marks omitted)); Pomona City School Dist. v. Payne, 9 Cal.App.2d 510, 512, 50 P.2d 822, 823 (1935) (“[OJbviously the interest accretions belong to such owner”); Vidal Realtors of Westport, Inc. v. Harry Bennett & Assocs., Inc., 1 Conn.App. 291, 297-298, 471 A.2d 658, 662 (1984) (“As long as the attached fund is used for profit, the profit ... is impounded for the benefit of the attaching creditor and is subject to the same ultimate disposition as the principal of which it is the incident” (internal quotation marks omitted)); Burnett v. Brito, 478 So.2d 845, 849 (Fla.App.1985) (“[A]ny interest earned on interpleaded and deposited funds follows the principal and shall be allocated to whomever is found entitled to the principal”); Morton Grove Park Dist. v. American Nat. Bank & Trust Co., 78 Ill.2d 353, 362-363, 35 Ill.Dec. 767, 771, 399 N.E.2d 1295, 1299 (1980) (“The earnings on the funds deposited are a mere incident of ownership of the fund itself’); B & M Coal Corp. v. United Mine Workers, 501 N.E.2d 401, 405 (Ind.1986) (“interest earnings must follow the principal and be distributed to the ultimate owners of the fund”); Unified School Dist. No. 490, Butler County v. Board of County Commissioners of Butler County, 237 Kan. 6, 9, 697 P.2d 64, 69 (1985) (“[I]n-terest follows principal”); Pontiac School Dist. v. City of Pontiac, 294 Mich. 708, 715-716, 294 N.W. 141, 144 (1940) (“The generally understood and applied principles that interest is merely an incident of the principal and must be accounted for”); State Highway Comm’n v. Spainhower, 504 S.W.2d 121, 126 (Mo.1973) (“Interest earned by a deposit of special funds is an increment accruing thereto” (internal quotation marks omitted)); Siroky v. Richland County, 271 Mont. 67, 74, 894 P.2d 309, 313 (1995) (“[Ijnterest earned belongs to the owner of the funds that generated the interest”) ....
The Court’s extensive list drums into consciousness the universality of the rule that interest on deposited funds belongs to the owner of the deposited funds. Phillips, 524 U.S. at 165 n. 5, 118 S.Ct. 1925. No exception has been noted.
Law and precedent leave no doubt that earnings on deposited money are the property of the depositor, not of the custodian and not of the state. If this court is to create a unique exception for bank deposits with the Federal Reserve, more support is required than the panel majority’s theory that because the deposits are not labeled “interest-bearing” and the earnings are placed “in one big pot” in the Federal Reserve banks, see maj. op. n. 10, the interest is not the property of the depositor.
Indeed, the government does not take the position that the United States owns *1383 either the deposits in Reverse banks (or the vault cash) or the interest thereon; the government’s position is that the Federal Reserve owns the interest because the accounts are designated as non-interest-bearing, and thus that when Texas State Bank made the required deposits in a non-interest-bearing account, it yielded all right to the interest earned by those deposits. That accounting argument does not support the appropriation of billions of dollars of bank depositors’ property.
The United States describes its diversion of the Reserve earnings to the general Treasury as “a tax upon the Federal Reserve System.” U.S. Supplemental Br. at 3 n.3. Texas State Bank observes that such a “tax” is not on the Federal Reserve System, but on all persons who place their money in banks and, absent taxing authority, raises Fifth Amendment concerns. Indeed, in some years the diversion of the Reserve income was by act of Congress, and in some years only by Treasury demand. The entire case is rife with unexplored legal, economic, and policy considerations, and the stakes are high. The ultimately correct answer to all the questions awaits resolution, for the court’s decision today is as unsupported as it is premature. It demands the considered judgment, in the first instance, by the Court of Federal Claims.[2]
II
The panel majority, justifying its treatment of this unappealed issue, states that it is simply affirming the trial court’s decision on an alternative ground. However, the trial court did not decide the issue, on any ground. Only the threshold NAFI question was decided, and only the NAFI question is before us.

. In fiscal year 2000 the Federal Reserve was required to transfer net earnings of $3,752 billion to the General fund of the Treasury. App. Br. at 16, U.S. Supplemental Br. at 3.

. The majority opinion suggests that the parties "did not object" to our "considering" the merits. The parties were never told that we were going to decide the merits. Indeed, the scope of the supplemental briefing that the panel requested was not commensurate with the merits.