[No. F004993. Fifth Dist. Feb. 7, 1986.]

FRESNO FIRE FIGHTERS, LOCAL 753, Plaintiff and Respondent, v. LAWRENCE D. JERNAGAN, as Auditor-Controller, etc. et al., Defendants and Appellants.

COUNSEL

Floyd R. B. Viau and Max E. Robinson, County Counsel, and J. Wesley Merritt, Deputy County Counsel, for Defendants and Appellants.

Adrian Kuyper, County Counsel, and Victor T. Bellerue, Deputy County Counsel, as Amici Curiae on behalf of Defendants and Appellants.

Davis & Reno and Duane W. Reno for Plaintiff and Respondent.

OPINION

FRANSON, Acting P. J.—

## INTRODUCTION

The question presented is whether the interest earned on moneys deposited in civil and criminal actions under California law is to be returned to the owner of the moneys or is to be retained by the county as part of its general fund. The trial court ruled that the owners of all cash court deposits are entitled to the interest earned on the money. It cited *Webb's Fabulous Pharmacies, Inc.* v. *Beckwith* (1980) 449 U.S. 155 [66 L.Ed.2d 358, 101 S.Ct. 446] for the proposition that retention of such interest by the county would deprive the depositor of his or her property without just compensation contrary to the Fifth and Fourteenth Amendments of the United States Constitution. Reasonable attorney's fees in an amount to be thereafter determined were allowed to the plaintiffs.

We affirm the trial court's ruling concerning cash deposits in civil actions; however, we reverse the ruling concerning cash bail deposits in criminal actions. We remand the case for reconsideration of the question of entitlement to attorney's fees.

## THE FACTS

On December 1, 1977, Fresno Fire Fighters Local 753 (Fire Fighters) deposited a $25,000 cash undertaking with appellant Larson in his capacity as Fresno County Clerk in accordance with Code of Civil Procedure sections 529[1] and 1054a,[2] as required for a preliminary injunction. Larson then delivered the money to appellant Malmstrom in his capacity as county treasurer. Malmstrom commingled the money with other county money and invested the same. Interest earned on the invested funds were paid into the county treasury.

After receiving judgment in the injunction action, Fire Fighters filed a request for return of its deposited moneys along with the interest accrued thereon. The $25,000 undertaking was returned but the appellants refused to remit the interest earned on the undertaking despite being advised by their own counsel that Fire Fighters was legally entitled to the interest.

Shortly thereafter, Fire Fighters filed its class action on behalf of all public and private cash depositors in court proceedings to compel appellants to remit all interest earned on moneys deposited with the courts of Fresno County. Fire Fighters was certified to represent all cash undertaking, cash bail and "other" category cash depositors whose causes of action accrued within three years before the filing of Fire Fighters' complaint.

## DISCUSSION

I. *Interest on cash deposits in civil actions.*

It has been the practice of Fresno County for many years to deposit moneys received in civil actions in the county treasury with the interest accrued

---

[1]Code of Civil Procedure section 529, subdivision (a) provides, "[o]n granting an injunction, the court or judge must require an undertaking on the part of the applicant to the effect that the applicant will pay to the party enjoined such damages, not exceeding an amount to be specified, as the party may sustain by reason of the injunction, if the court finally decides that the applicant was not entitled to the injunction. . . ."

[2]Code of Civil Procedure section 1054a provided in 1977, "In all civil cases, wherein an undertaking is required, the party required to furnish such undertaking may, in lieu thereof, deposit with the . . . clerk of the court . . .: [¶] (a) A sum of money in lawful money of the United States equal to the amount required to be secured by said undertaking; . . ." (Code Civ. Proc., § 1054a was repealed by Stats. 1982, ch. 517, § 170. See successor statute, Code Civ. Proc., § 995.710 effective Jan. 1, 1983.)

going to the general fund absent a statute directing otherwise or a court order requiring the county to pay the interest to the depositor. The county points to several statutes which require the payment of interest on court funds. Government Code section 53844 provides that "[a]ll interest earned on funds in the county treasury shall be credited to said general fund of the county, excepting therefrom the interest on deposits of school districts which shall accrue to the general funds of the respective school districts, the interest earned on specific investments of a local agency as authorized by Section 53601 of this code or by Section 5007 of the Education Code [repealed; see now Ed. Code, § 41015], and moneys on deposit in court in eminent domain actions . . . ." The county also cites Code of Civil Procedure section 386.1 which provides with reference to interpleader funds that "the court shall, upon the application of any party to the action, order such deposit be invested in an insured interest-bearing account. Interest on such amount shall be allocated to the parties in the same proportion as the original funds are allocated." Code of Civil Procedure section 995.740, effective January 1, 1983, provides with respect to cash undertakings that "[i]f no proceedings are pending to enforce the liability of the principal on the deposit, the officer shall: [¶] (a) Pay quarterly, on demand, any interest on the deposit, when earned in accordance with the terms of the account or certificate, to the principal. . . ."

■ The county's argument that Government Code section 53844 authorizes it to place all civil action cash deposits in the county treasury and to credit the interest accrued thereon to the general fund absent a specific court order or a statutory directive otherwise, must be rejected for two reasons. First, although section 53844 provides that "[a]ll interest earned on funds *in* the county treasury shall be credited to said general fund of the county" (italics added) with certain exceptions, the statute does not specify which moneys are to go into the county treasury. Court deposits are governed by the explicit procedural requirements of Code of Civil Procedure section 573: "Whenever money is paid into or deposited in the court, the same must be delivered to the clerk, or, if there be no clerk, to the judge, in person, or to such of the clerk's deputies as shall be specially authorized by his appointment in writing to receive the same. . . . The judge, clerk, or such deputy clerk, must, unless otherwise directed by law, deposit such money *with the county treasurer, to be held by him subject to the order of the court. The treasurer must keep each fund distinct, and open an account for each.* For the safekeeping of the money deposited with him the treasurer is liable on his official bond." (Italics added.) Because section 573 specifically requires that court moneys which are deposited with the county treasurer must be kept separate and in individual accounts, the general directive of Government Code section 53844 that the interest earned on funds in the county treasury shall be credited to the general fund simply does not apply.

In other words, depositing funds *with* the county treasurer cannot be equated with depositing funds *in* the county treasury. Absent a statutory directive (and we find none) that court deposits transferred to the county treasurer are to be placed in the county treasury, they must be placed in a special interest-bearing account for the benefit of the owner as required by Code of Civil Procedure section 573.

Second, the county's practice violates the clear mandate of *Metropolitan Water Dist.* v. *Adams* (1948) 32 Cal.2d 620 [197 P.2d 543]. There, the plaintiff, the Metropolitan Water District of Los Angeles, claimed $30,000 interest on some $500,000 deposited with the Riverside County Superior Court Clerk at the commencement of the district's eminent domain proceedings against private property owners. The funds were deposited as security to obtain immediate possession and use of the condemned land. The funds were turned over to the county treasurer who deposited the money in various banks where it earned the interest subject to the controversy.

The Supreme Court noted that in making the bank deposits the county treasurer "assertedly" acted pursuant to the Depository Act (Stats. 1933, ch. 189, p. 642; see now Gov. Code, §§ 53630-53681) which provided that all moneys belonging to or in the custody of any county including all moneys paid to the county treasurer or other official having authority to receive the same, for the payment of principal, interest or penalties of bonds required by law, shall, so far as possible, be deposited in a bank for safekeeping. The Depository Act further provided that "any sum so deposited shall be deemed to be in the treasury of such county . . . . Such deposits, with interest thereon, shall be subject to withdrawal at any time upon the demand of the treasurer or other authorized official. . . ." (Stats 1933, ch. 189, § 1, pp. 642-643.) (See Gov. Code, § 53647 which provides in part that "[i]nterest on all money deposited belongs to, and shall be paid quarterly into the general fund of, the local agency represented by the officer making the deposit, unless otherwise directed by law.")

The Supreme Court observed that the superior court has no treasurer of its own but that the Legislature had provided in Code of Civil Procedure section 573 that moneys deposited in court be delivered to the clerk who must, unless otherwise directed by law, deposit the money " 'with the *county treasurer, to be held by him subject to the order of the court.*' " (*Metropolitan Water Dist.* v. *Adams, supra,* 32 Cal.2d at p. 626.) Thus, "[t]he court, not the county board of supervisors, has control of the money." (*Id.,* at p. 628.)

The court acknowledged that the mere deposit of money in court does not give rise to the right to receive interest. "In the absence of a statute . . . ,

no claim would arise for return of other than the original deposit. Civil Code, section 1915, provides: '[I]nterest is the compensation *allowed by law* or fixed by the parties for the use, or forebearance, or detention of money.'" (*Id.,* at p. 628.) However, the Depository Act (see now Gov. Code, § 53647), pursuant to which the deposits were made, did provide for the payment of interest thereon.

The court then decided the question of entitlement to the interest under the Depository Act. That section also provided that "'[i]nterest on all moneys deposited as herein provided shall belong to and shall be paid quarterly into the general fund of the county, city . . . or other public or municipal corporation *represented by the officer making such deposit,* except where the law otherwise directs.'" (32 Cal.2d at p. 629.) Because the county treasurer was representing *the court* and not the county when he made the deposit, the Supreme Court ruled that the interest belonged to the court. "We conclude that it is the superior court which in the view of the law holds the entire sum, the principal together with its accretions of interest, as custodian for the water district, and, inasmuch as the object of such retention has ended, the court must return to the water district the entire sum, or any balance thereof, which it may determine remains on hand." (*Id.,* at p. 630; see also *Ostly* v. *Saper* (1957) 147 Cal.App.2d 671 [305 P.2d 946] applying the *Metropolitan Water Dist.* analysis to interpleader funds deposited by the clerk in the county treasury.)

The *Metropolitan Water Dist.* holding means that "as a matter of general law and one of statutory construction, the superior court is in control of the deposited funds and the owner of any interest earned thereon. Of course its ownership is that of a trustee for the person ultimately determined by the court to be entitled to receive the money from it; such determination relates back to the time of the initial deposit of the fund in court." (*Ostly* v. *Saper, supra,* 147 Cal.App.2d at p. 675.)

We conclude, therefore, that the owners of all cash deposits made in civil actions within the three-year period before the filing of the Fire Fighters' complaint are entitled to the interest earned on their moneys while in the general fund of the county.

II. *Cash bail in criminal proceedings.*

██ The California Legislature has established a comprehensive scheme for the posting of bail. Penal Code section 1269, entitled "Taking of bail defined," provides that "[t]he taking of bail consists in the acceptance, by a competent court or magistrate, of the undertaking of sufficient bail for the appearance of the defendant, according to the terms of the undertaking

. . . ." Penal Code section 1269b provides for the acceptance of bail, notice of appearance of prisoner, a bail schedule, the discharge of prisoner from custody and the disposition of bail. Penal Code section 1295 authorizes a cash bail. Penal Code sections 1305 through 1309 provide detailed rules for the forfeiture of bail because of a defendant's nonappearance. Penal Code section 1307 provides: "If, by reason of the neglect of the defendant to appear, money deposited instead of bail is forfeited, and the forfeiture is not discharged or remitted, the clerk with whom it is deposited must, at the end of 180 days, unless the court has before that time discharged the forfeiture, pay over the money deposited *to the county treasurer.*" (Italics added.)

The Legislature has also provided a statutory scheme for the payment of interest on bail money deposited in our courts. Government Code section 53647.5, provides "[n]otwithstanding any other provision of law, interest earned on any bail money deposited in a bank account pursuant to [specified Pen. Code sections] *shall, if the board of supervisors so directs, be allocated for the support of the courts in that county.*" (Italics added, added by Stats. 1982, ch. 809, § 1.)

Although the record does not reflect whether the Fresno County Board of Supervisors has directed that interest earned on bail money be allocated for the support of the county courts, we take judicial notice of the need of all of the counties in California for moneys to operate their courts.

Because the trial court ruled that the retention by the county of interest earned on cash bail deposits would violate the Fifth and Fourteenth Amendments to the United States Constitution as applied in *Webb's Fabulous Pharmacies, Inc.* v. *Beckwith, supra,* 449 U.S. 155 [66 L.Ed.2d 358], we must decide whether the holding of that case applies to cash bail deposits in California. In *Webb's,* the Supreme Court framed the issue before it as whether it is constitutional for a county to take as its own, under the authority of a state statute, the interest accruing on *interpleader* funds deposited in the registry of the county court, when a fee, prescribed by another statute, is also charged for the clerk's services in receiving the fund into the registry. The statute which was the object of the constitutional challenge was Florida Statutes section 28.33 (1977) which provided that the clerk of the circuit court in each county must invest any funds in designated depository banks in interest-bearing certificates or other United States obligations and that "[a]ll interest accruing from moneys deposited shall be deemed income of the office of the clerk of the circuit court investing such moneys and shall be deposited in the same accounts as are other fees and commissions of the clerk's office."

Another Florida statute authorized the clerk to deduct from the deposited funds an administrative fee "for services rendered" for receiving money into the court registry. The fee was calculated at 1 percent of the first $500 and .5 percent of the remainder. (Fla. Stats., § 28.24(14) (1977).)

Almost one year after the interpleader deposit, the court directed that the principal of the fund less the statutory administrative fee be paid to a court receiver to be prorated among Webb's creditors. The interest earned on the deposit (which exceeded $90,000 on the interpleader deposit of $1,812,145) was not turned over to the receiver.

The Supreme Court first emphasized that the Florida Statutes would allow the county to exact *two tolls* while the interpleader fund was held by the court clerk. The first toll was a statutory fee "for services rendered" by the clerk's office for receiving money into the court registry. This fee, which amounted to $9,228.74, would be deducted from the principal amount deposited. The second toll would be the retention of all interest accruing from the money deposited. This toll would be exacted because of the statutory language mandating that the interest "shall be deemed income of the office of the clerk of the circuit court investing such moneys . . . ." The Supreme Court noted that under Florida law the principal sum deposited in the court registry was private property but accepted the proposition urged by the county that apart from statute, Florida law did not require that interest be earned on a registry deposit and also that property interests are not created by the Constitution, i.e., a mere "unilateral expectation" is not a property interest entitled to constitutional protection. The court, however, then found that Webb's creditors had more than a unilateral expectation since the money "was property held *only* for the ultimate benefit of Webb's creditors, not for the benefit of the court and not for the benefit of the county." (449 U.S. at p. 161 [66 L.Ed.2d at p. 365], italics added.) The Supreme Court applied the "usual and general rule" that "any interest on an interpleaded and deposited fund follows the principal and is to be allocated to those who are ultimately to be the owners of that principal." (*Id.*, at p. 162 [66 L.Ed.2d at p. 365].) Thus, when the Florida Supreme Court ruled contrary to the long established rule, it effected the conversion of private property to public property without just compensation.

In reaching its decision, the high court acknowledged a salient principle which we believe to be critical to the question whether interest should be paid on bail moneys. The court said it "has been *permissive* in upholding governmental action that may deny the property owner of some beneficial use of his property or that may restrict the owner's full exploitation of the property, *if such public action is justified as promoting the*

*general welfare.* [Citations.]'' (*Id.,* at p. 163 [66 L.Ed.2d at p. 366], italics added.) Moreover, ''[n]o police power justification [was] offered for the deprivation. Neither the statute nor [the county] suggest[ed] any reasonable basis to sustain the taking of the interest earned by the interpleader fund.'' (*Ibid.*) Finally, the *Webb's* opinion concluded: ''We hold that under the *narrow circumstances of this case*—where there is a separate and distinct state statute authorizing a clerk's fee 'for services rendered' based upon the amount of principal deposited; where the deposited fund itself concededly is private; and where the deposit in the court's registry is required by state statute in order for the depositor to avail itself of statutory protection *from claims of creditors and others*—Seminole County's taking unto itself . . . the interest earned on the interpleader fund while it was in the registry of the court was a taking violative of the Fifth and Fourteenth Amendments. We express no view as to the constitutionality of a statute that prescribes a county's retention of interest earned, where the interest would be the only return to the county for services it renders.'' (*Id.,* at pp. 164-165 [66 L.Ed.2d at p. 365], italics added.)

Thus, *Webb's Fabulous Pharmacies, Inc.* is distinguishable from the present case in at least two respects: First, there was no ''reasonable basis'' suggested by the Florida statute nor by Seminole County for the taking of the interest earned by the interpleader fund. The fund was held *only* for the benefit of the ultimate owner of the money and not for the benefit of the county or the court. In the present case, however, the California Legislature has declared that the interest earned on any bail money deposited in criminal proceedings may, if the board of supervisors so directs, be used by the county for the support of the courts of that county. (Gov. Code, § 53647.5.) This is a reasonable need since the operation of the courts is essential to the ''general welfare'' of the people. Further, unlike cash deposits in civil cases such as *Webb's* where the money is deposited only for the benefit of a private person or entity, bail money is deposited for a public purpose— security for the appearance of the defendant at all required court hearings. This arises because the public as well as the defendant is entitled to the orderly determination of the truth or falsity of the charges against the defendant. If the defendant fails to appear, the bail money is forfeited to the county to help defray the costs of apprehending the defendant. Since the public has a vested interest in the defendant's appearance at all court hearings, it has a vested interest in the bail money deposited to secure that appearance. Hence, the *public purpose* of bail justifies the denial to the owner of the beneficial use of the money while it is on deposit with the court. (*Webb's Fabulous Pharmacies, Inc.* v. *Beckwith, supra,* 449 U.S. at p. 163 [66 L.Ed.2d at p. 366]; see, e.g., *Andrus* v. *Allard* (1979) 444 U.S. 51, 64-68 [62 L.Ed.2d 210, 221-224, 100 S.Ct. 318] and *Penn Central*

*Transp. Co.* v. *New York City* (1978) 438 U.S. 104, 125-129 [57 L.Ed.2d 631, 648-651, 98 S.Ct. 2646].)

The second distinguishing feature of *Webb's* is that the decision was triggered by the double toll exacted in that case. Not only did the owner of the interpleader fund lose the interest accrued on the fund but it was also charged a substantial administrative fee which was deducted from the principal amount deposited. While California has a statute which authorizes the treasurer or other authorized county official who invests moneys for public agencies for the purpose of earning interest thereon to deduct actual administrative costs *from the interest earned* on the investment (Gov. Code, § 27013), there is no statute authorizing the deduction of the administrative charge from the principal amount deposited as in *Webb's.* We therefore conclude that Fresno County's retention of interest accrued on cash bail deposits in criminal actions is not an unconstitutional taking of private property as condemned in *Webb's Fabulous Pharmacies, Inc.* v. *Beckwith, supra,* 449 U.S. 155.

III. *The award of attorney's fees.*

█ The trial court awarded reasonable attorney's fees to Fire Fighters on the "private attorney general" theory of Code of Civil Procedure section 1021.5. This statute provides: "Upon motion, a court may award attorneys' fees to a successful party against one or more opposing parties in any action which has resulted in the enforcement of an important right affecting the public interest if: (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any. . . ." The trial judge determined that Fire Fighters was "not only recovering their own property, but vindicating a right to interest on cash undertakings deposited by all future litigants who avail themselves of this Court's process." Since we are reversing the trial court's finding that Fire Fighters was entitled to interest on cash bail deposits in criminal actions, the question whether Fire Fighters is entitled to an award of attorney's fees under section 1021.5 must be reexamined.

Has Fire Fighters actually sustained a recompensable financial burden in conducting the lawsuit? "Whether the financial burden of private enforcement makes an award appropriate depends on whether the cost of plaintiffs' victory transcends their personal interest, i.e., whether the litigation expenses would place a disproportionate burden on them [citation]." (7 Witkin, Cal. Procedure (3d ed. 1985) p. 607.) Thus, it must be determined by

the trial court whether Fire Fighters sustained a financial burden out of proportion to its personal stake in the litigation.

Fire Fighters' personal interest in the controversy was a return of interest earned on the $25,000 deposited with the court. There is no indication in the record what Fire Fighters' victory cost them in terms of attorney's fees. Thus, on remand the trial court should ascertain the amount of Fire Fighters' attorney's fees in recovering the interest on the $25,000 and then balance the fee against Fire Fighters' personal stake in the litigation. This will determine whether the "necessity and financial burden of private enforcement" of the right to interest on court deposits in civil actions justifies an award of attorney's fees. (Code Civ. Proc., § 1021.5.)

The judgment is affirmed insofar as Fire Fighters' claim to interest earned on cash deposits in civil actions. The judgment is reversed insofar as Fire Fighters' claim to a return of interest earned on cash bail deposits in criminal actions and the award of attorney's fees to Fire Fighters under the private attorney general doctrine. The matter is remanded to the trial court with directions to reevaluate Fire Fighters' right to attorney's fees according to Code of Civil Procedure section 1021.5.

Each party to bear its own costs on appeal.

Hanson (P. D.), J., and Castellucci, J.,* concurred.

Petitions for a rehearing were denied March 5, 1986, and appellants' petition for review by the Supreme Court was denied May 21, 1986.

---

*Assigned by the Chairperson of the Judicial Council.