No. 94-508

IN THE SUPREME COURT OF THE STATE OF MONTANA

1995

LYNNETTE SIROKY, Trustee,

     Plaintiff and Respondent,

  v.

RICHLAND COUNTY,

     Defendant and Appellant

APPEAL FROM: District Court of the Seventh Judicial District,
In and for the County of Richland,
The Honorable Richard G. Phillips, Judge presiding.

COUNSEL OF RECORD:

     For Appellant:

        Mike Weber, Richland County Attorney,
        Sidney, Montana

     For Respondent:

        Monte J. Boettger, Attorney at Law,
        Lewistown, Montana

Submitted on Briefs: March 23, 1995

Decided: April 25, 1995

FILED

Filed: APR 25 1995

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

_____
Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

Plaintiff, Lynnette Siroky, brought suit in District Court, Seventh Judicial District, Richland County, to recover damages from Richland County for the conversion of interest earned on a $50,000 cash bond deposited with the District Court to satisfy a condition of bail in a criminal action. The District Court granted summary judgment in favor of Siroky and Richland County appeals. We affirm.

Factual Background

Lawrence Sack is the individual who deposited the $50,000 bond at issue. Lynnette Siroky is Mr. Sack's trustee and is treated as the owner of the bond and the claimant to the monetary interest throughout this opinion.

Lawrence Sack was charged with one count of felony theft and one count of conspiracy alleged to have occurred on or about March 26, 1990 in Richland County, Montana. Bond was set in the sum of $50,000. On April 23, 1990, Sack deposited the sum of $50,000 with the Clerk of the Court. On April 30, 1990, the $50,000 bond was deposited into the trust account of the Richland County Clerk of Court and then into an interest bearing account with the Richland County Treasurer at the Richland National Bank and Trust, Sidney, Montana. The money continued to accrue interest thereafter.

Sack ultimately pled guilty and was sentenced. The $50,000 bond was then exonerated with $25,000 being applied toward restitution and $25,000 returned to Sack. Richland County retained the interest income generated by the bond.

2

Sack submitted a claim to the County on June 13, 1991, for the accrued interest and his claim was denied on January 23, 1992.

On July 22, 1992, Lynnette Siroky instituted the present action as trustee for Lawrence Sack. On December 30, 1993, Siroky filed a motion for partial summary judgment on the issue of whether Siroky was entitled to receive the interest earned as a result of Siroky's bail bond deposit with the court. A hearing on the motion was held February 15, 1994. The District Court entered an order granting partial summary judgment on March 29, 1994. On June 16, 1994, Siroky made a motion for full summary judgment, which motion was granted by order of the Seventh Judicial District Court on July 25, 1994. Richland County appeals.

## Issue presented

Whether interest earned on bond monies deposited in criminal actions under Montana law is to be returned to the owner of the money or is to be retained by the County as part of its general fund.

## Standard of Review

Our standard of review of an order by a district court granting summary judgment is the same as that used by the district court under Rule 56(c), M.R.Civ.P. Mills v. Mather (Mont. 1995), ___ P.2d ___, ___, 52 St.Rep. 139, 141. Summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Rule 56(c), M.R.Civ.P. In the present case, the parties agreed that there were no genuine issues of material fact and thus, the matter was

3

properly subject to summary disposition pursuant to Rule 56(c), M.R.Civ.P.

## Discussion

Property interests are created not by the constitution, but by independent sources such as state law. Mogan v. City of Harlem (1989), 238 Mont. 1, 6-7, 775 P.2d 686, 689. In the present case, the Montana Legislature has established a statutory scheme regulating the posting, forfeiture and discharge of bail. Section 46-g-106, MCA, authorizes the release of an accused upon reasonable conditions that ensure the appearance of the accused and protect the safety of the community. Section 46-g-108, MCA, allows the court to impose any condition that will reasonably ensure the appearance of the accused, including a condition that "the defendant shall furnish bail in accordance with 46-9-401."

Section 46-g-401, MCA, sets forth numerous ways that bail may be furnished, one of which is by a deposit of cash with the court of an amount equal to the required bail. Mr. Sack voluntarily chose to deposit a cash bond with the District Court in order to satisfy the condition of his bail.

The legislature has further provided that, if the conditions of bail are not satisfied (e.g. if the defendant does not appear in court), the bail shall be forfeited and the bail money shall be paid to the treasury of the city or county where the money was deposited. Section 46-g-511, MCA. On the other hand, if the conditions of bail are satisfactorily performed and the accused is

4

discharged from his obligations, "the court shall return to him or his sureties the deposit of any cash . . ." Section 46-g-502, MCA. The statutes do not specifically state whether or not the defendant is entitled to the interest generated by the cash during the time of the deposit.

The United States Supreme Court addressed a similar issue in Webb's Fabulous Pharmacies, Inc. v. Beckwith (1980), 449 U.S. 155, 101 S.Ct. 446, 66 L.Ed.2d 358. Webb's Pharmacies sold all of its assets to Eckerd, another Florida corporation. At the closing, it appeared that Webb's Pharmacies' debts were greater than the purchase price to be paid by Eckerd. Accordingly, under the Bulk Transfer Act, Eckerd filed a complaint in interpleader and tendered the purchase price to the court. Under Florida law, the clerk deposited the money in an interest bearing account. The court reserved decision on entitlement to the interest, as between the clerk and Webb's Pharmacies' creditors. The clerk deducted a fee from the funds "for services rendered" as allowed by Florida statute. A receiver was appointed for Webb's Pharmacies and the receiver filed a motion for release of the funds to him. The court released the funds, less the amount of the statutory fee and less the amount of accumulated interest. The receiver then moved for release of the accumulated interest. The court held in favor of the receiver and the clerk appealed. The Florida Supreme Court reversed the Circuit Court stating that the funds, although private money at the time of deposit, were "considered 'public money'" from the date of the deposit until they left the account; that "the

statute takes only what it creates;" and that there was no unconstitutional taking because interest earned on the account was not private property. Beckwith v. Webb's Fabulous Pharmacies, Inc. (Fla. 1979), *374* So.2d 951, 952-53.

The United States Supreme Court noted that the Florida statutory scheme would allow the county to exact two tolls while the interpleader funds were held by the clerk of court. The first being the statutory fee for services rendered. The second would be the keeping of the accrued interest pursuant to Florida's statutory provision that the interest "shall be deemed income of the office of the clerk of the circuit court."

The Supreme Court found that the clerk held those funds for the "ultimate benefit of Webb's creditors, not for the benefit of the court and not for the benefit of the county." Rather, the creditors had a state-created property right to their respective portions of the funds. The Court noted that the general rule is that any interest on interpleaded funds follows the principal and is to be allocated to those who *are* ultimately to be the owners of that principal. *Webb's Fabulous Pharmacies, 155* U.S. at 161-62. In rejecting the Florida Supreme Court's reasoning that the funds temporarily assumed the status of "public money," the Supreme Court held:

> This court has been permissive in upholding governmental action that may deny the property owner of some beneficial use of his property or that may restrict the owner's full exploitation of the property, if such public action is justified as promoting the general welfare.
>
> . . . .

> Here, however, Seminole County has not merely "adjust[ed] the benefits and burdens of economic life to promote the common good." [Citation omitted.] Rather, the exaction is a forced contribution to general governmental revenues, and it is not reasonably related to the costs of using the courts. Indeed, "[t]he Fifth Amendment's guarantee . . . was designed to bar Government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole." [Citation omitted.]

*Webb's Fabulous Pharmacies, 155* U.S. at 163.

Noting that neither the statute nor the county offered any justification for the deprivation, the Court rejected the notion that the money could simply be characterized as "public money" because it was temporarily held by the court.

> The earnings of a fund are incidents of ownership of the fund itself and are property just as the fund itself is property. The state statute has the practical effect of appropriating for the county the value of the use of the fund for the period in which it is held in the registry.
>
> To put it another way: a State, by *ipse dixit,* may not transform private property into public property without compensation, even for the limited duration of the deposit in court. This is the very kind of thing that the Taking Clause of the Fifth Amendment was meant to prevent. That Clause stands as a shield against the arbitrary use of governmental power.

*Webb's Fabulous* Pharmacies, 155 U.S. at 164.

Under the narrow circumstances of the *Webb's Pharmacies* case, where there was a separate and distinct statute authorizing a clerk's fee for "services rendered" and where the deposited fund itself concededly was private, the United States Supreme Court concluded:

> Seminole County's taking unto itself, under § 28.33 and 1973 Fla. Laws, ch. 73-282, the interest earned on the interpleader fund while it was in the registry of the court was a taking violative of the Fifth and Fourteenth Amendments. We express no view as to the constitution-

7

ality of a statute that prescribes a county's retention of interest earned, where the interest would be the only return to the county for services it renders.

*Webb's Fabulous Pharmacies, 155* U.S. at 164-65.

Richland County relies upon a decision from an intermediate appellate court in California, Fresno Firefighters' Local 753 v. Jernagan (Cal. Ct. App. 5th Dist. 1986), 222 Cal. Rptr. 886, 177 Cal. App. 3d 403.   In *Fresno Firefighters,* the California court held that the interest earned on cash bail bonds in criminal actions belongs to the county not the depositor.   The court found that, unlike cash deposits in civil cases such *as Webb's Pharmacies* where the money is deposited only for the benefit of a private person, "bail money is deposited for a public purpose--security for the appearance of the defendant at all required court hearings." Accordingly, the court concluded: "Hence, the *public purpose of* bail justifies the denial to the owner of the beneficial use of the money while it is on deposit with the court." *Fresno Firefighters,* 222 Cal. Rptr. at 892.

We find that the situation in *Fresno Firefighters is* distinguishable from the case before us.   In *Fresno Firefighters,* 222 Cal. Rptr. at 890, the court noted that the State of California had enacted a statute providing that:

interest earned on any bail money deposited in a bank pursuant to [specified Pen.Code sections1 *shall, if the board of supervisors so directs, be allocated for the support of the courts in that county.*

In light of this statutory provision, the California court concluded that the retention of interest was justified as "promoting the general welfare."  *Fresno Firefighters, 222 Cal.*

*8*

Rptr. at 892. In contrast to California, Montana has not adopted any statutory provisions allowing political entities to retain interest on cash bonds nor is there any suggestion advanced that, in Montana, the retained interest would go to the court system, thereby promoting the public welfare. On the contrary, the record indicates that in the present case, the County's general fund, rather than the court, would benefit from the earned interest.

Although the United States Supreme Court's holding was based upon the narrow circumstances of the *Webb's Pharmacies case, we* conclude that the principles enunciated in *Webb's Pharmacies* are applicable to the facts presently before us. As in *Webb's Pharmacies,* Richland County offers no justification to sustain the taking of the interest earned by the bond money. The bond money was Sack's private property and could only be lost upon a forfeiture resulting from a violation of the terms of the bond. That did not happen. Rather, the bond was exonerated.

We hold that the constitutional analysis in *Webb's Pharmacies* is persuasive. The money deposited was Sack's private property at all times. The retention of earned interest on that money would amount to a taking of Sack's property in violation of the 5th and 14th Amendments of the United States Constitution and Article II, Section 29 of the Montana Constitution.

Furthermore, during the period that the deposit was earning interest, Sack was an "accused" who was presumed innocent of the charges. The court's requirement of a cash bond was designed to create an incentive to Sack to appear in court at all appointed

times.  Section 46-g-106, MCA.  Obviously, if the State or County lays claim to some or all of that bond or the interest thereon, there is less incentive for Sack to appear.

In the *Webb's Pharmacies* decision, the Supreme Court noted that,  if the county were allowed to retain interest on the interpleader  deposit,  "its  officials  would  feel  an  inherent pressure and possess a natural inclination to defer distribution, for that interest return would be greater the longer the fund is held; there would be, therefore, a built-in disincentive against distributing the principal to  those entitled to it."   *Webb's Fabulous Pharmacies, 155* U.S. at 162.

That reasoning is even more compelling in the context of a cash bond in a criminal proceeding.  If Richland County were allowed to retain the interest as public monies, there would be an incentive to the County to tie up the money as long as possible, thereby earning more interest.  The County would thus stand to gain by prolonging Sack's criminal prosecution.  Such an incentive runs contrary to the constitutional guarantees of speedy trial under the 6th Amendment to the United States Constitution and Article II, Section 24 of the Montana Constitution.

We hold that the County's retention of the interest money on a bail bond cash deposit would violate the guarantee in Article II, Section 17 of the Montana Constitution that a citizen cannot be deprived of property without due process of law, and the guarantee in Article II,  Section 29 of the Montana Constitution,  that property cannot be taken for public use without just compensation.

10

Furthermore, Article II, Section 24 of the Montana Constitution guarantees a speedy public trial. Allowing a county to retain interest on bail money has the potential to thwart that constitutional guarantee.

In Montana, there is no statutory requirement that the clerk of court deposit bond money in an interest bearing account. However, if the court does so (or, upon motion, is ordered to do so) then the court must abide by the general rule recognized by the United States Supreme Court in *Webb's Pharmacies*, that is, that interest earned belongs to the owner of the funds that generated the interest.

As the District Court correctly noted, the County is no more entitled to retain the interest on this cash bond than it would be to retain accruing dividends on a deposit of stocks or bonds or the appreciated value on a pledge of real estate under § 46-g-401, MCA.

Affirmed.

_____
                    Justice

We concur.

_____
          Chief Justice

_____

_____

_____
          Justices

11